SMITH and another, Executors of HUTCHINSON,
*against* EVANS.

*Pittsburg,*
*Monday,*
September 13.

IN ERROR.

ERROR to the Common Pleas of *Indiana* county.

The plaintiff sold to the defendant "three tracts of land containing nine hundred ninety-one acres and a quarter, and allowance, at twelve shillings and six pence per acre." The case below was *scire facias* upon a mortgage given by *John Hutchinson* the testator to *Cadwalader Evans,* on "one acres and a quarter, and allowance, at twelve shillings and six pence per acre." The plaintiff afterwards obtained patents in his own name, and executed a conveyance of the tracts to the defendant, describing them by courses and distances according to the patents, and stating them as "containing in the whole nine hundred ninety-one acres and a quarter, and allowance &c. be the same more or less." The defendant having previously paid a part of the purchase money, gave his bonds to the plaintiff on the day after the conveyance, for the sum remaining due, with a mortgage on the three tracts, stating them to contain "in the whole nine hundred ninety-one acres and a quarter, and allowance," and describing them by courses and distances. Upon a survey made twelve years afterwards the tracts were ascertained to fall short 88 acres 48 perches. *Held* that the defendant was not entitled to any deduction from his bonds, on account of the deficiency.

*Quære:* how the law would have been, if the case had stood on the original agreement, without the subsequent acceptance of the deed, and the mortgage.

If

the 24th of *March* 1798, of three certain adjoining tracts of land, forming one large tract in *Indiana* county, stated to contain in the whole 991¼ acres and allowance, described by courses and distances; and with a *proviso* to be void on the payment of two bonds, of the same date with the mortgage, one conditioned for the payment of 169*l*. 2*s*. 9*d*. on the 7th of *June* 1798 with one year's interest, and the other for the payment of the like sum on the 7th of *June* 1799, with two years interest.

The defendants pleaded payment with leave to give the special matter in evidence; and on issue being joined, the following case was stated, under which the cause was decided in this Court, a judgment having been entered below by consent and without prejudice, for the whole sum claimed by the plaintiff.

" It is agreed that the following are the facts in this " cause, and that they shall be considered by the Court in " the nature of a special verdict.

" The mortgage recited in the *scire facias* was duly exe-" cuted and delivered by the said *John Hutchinson* on " 24th *March* 1798.

" The original contract on which the said mortgage was " given is as follows: *Cadwalader Evans*, the plaintiff, on " 27th *May* 1797, sold to the said *John Hutchinson* three " tracts of land mentioned in the writing of that date, as " containing 991¼ acres and allowance, at twelve shillings " and six pence per acre, to be paid as therein stated; *prout* " said writing, No. 1.

" On 22d *June* the said *C. Evans* gave a receipt for 63*l*. " 15*s*. part of the purchase money for said land, stating the " contract and the terms thereof; *prout* said receipt, No. 2.

" By various other receipts herewith shewn, the whole " amount of the said purchase money and interest, except " 442 dollars and 7 cents, has been paid to plaintiff.

" On 1st *March* 1798, a patent was granted to *C. Evans* for " one of the said tracts of land, warranted to *John Ashmead*, " as containing 345½ acres, and a patent for the tract war-" ranted to *Benjamin Mifflin* as containing 318½ acres.

" On 8th *March* 1798, a patent was granted to the said " *Evans* for the tract warranted to *Joseph Mifflin* as con-" taining 327⅓ acres.

---

1813.

SMITH
*v.*
EVANS.

If the quantity falls short, where the conveyance is for a gross sum, and by courses and distances which truly describe the premises, there can be no deduction from the purchase money, unless there has been fraud.

*Quære:* how the law is where a tract is sold at so much per acre, and there is a deficiency. What excess or deficiency may be intended by " more or less."

" On 23d *March* 1798, *Cadwalader Evans* by indenture, " reciting said patents, conveyed to *John Hutchinson* the " said three tracts of land for the consideration of 619*l.* 10*s.* " 6*d.*, *prout* extract of said indenture, No. 3.

" On 31st *May* 1810, the lines of the said three tracts of " land were traced and measured by *Alexander Taylor* " under a rule of Court, and found to contain 903 acres and " one tenth, being 88 acres and 48 perches less than the " number of acres mentioned in the indenture.

" If upon the whole matter, and the writings above set " forth, the Court are of opinion that the defendants are " bound to pay the full amount of the consideration money " mentioned therein, then judgment to be entered for the " plaintiff for 442 dollars 7 cents, with interest from 10th " *September* 1811.

" But if the Court are of opinion the defendants ought " not to pay for more land than is found to be within the " lines of said surveys, at the rate of twelve shillings and " six pence per acre, then judgment to be entered for the " plaintiff for 152 dollars 91 cents, with interest from 10th " *September* 1811.

" And it is agreed that either party may take a writ of " error without prejudice.

### No. 1.

" *John Hutchinson*
" 1797,           To *Cadwalader Evans* - - Dr.
" *May*, To three tracts of land on the waters of
       *Black Legs Creek*, containing 991¼
       acres and allowance, sold him at twelve
       shillings and six pence per acre,   -   £ 619 10 6

   ½ to be paid down - - - 309 15 3½
   ¼ in one year with interest   154 17 7½
   ¼ in two years with interest   154 17 7½
                        £ 619 10 7

" 1797,
" *June* 7th, Received of *John Hutchinson* by the
       hands of *William Finley* Esq. - - 63 15
       To be paid in *April* 1798, 580 dollars. 217 10
                      £ 281 5

Whole purchase money 619 10 6
281   5
     £ 338  5 6
to be paid 7th *June* 1798,   169 2 9½
*July* 1799,   169 2 9½
     £ 338 5 7

### No. 2.

Received *June* 22d 1797, of *John Hutchinson* by the hands of *William Findley*, Esq. sixty-three pounds fifteen shillings, which is to be considered as part of the purchase money to be paid me by the said *Hutchinson*, for three tracts of land on *Black Legs* creek in *Westmoreland* county, surveyed on warrants to *John Ashmead*, *Joseph Mifflin* and *Benjamin Mifflin* in 1773, containing in the whole nine hundred and eighty-one acres and one tenth of an acre, and the usual allowance, at twelve shillings and six pence per acre, provided he pays me so much within two months after the date hereof, as with the sum now received, shall amount to one half the whole purchase money at the above price; and as soon as I make him a title in fee for the said land, shall execute to me bonds and warrants of attorney with mortgage on said land, for the remaining half, payable with interest, one half thereof in one year, and the residue in two years from the 27th of *May* now last past.

£ 63 15     CADW: EVANS, attorney in fact for
               *Matthew Irwin*, surviving partner of
Witness,     the late house of *Mifflin* and *Irwin*
*Andrew Gregg*.    in *Philadelphia*.

### No. 3.

Indenture, *Cadwalader Evans* to *John Hutchinson*, dated 23d *March* 1798, selling the three tracts of land in consideration of 619*l*. 10*s*. 6*d*., reciting the courses and distances in the several patents, and the number of acres mentioned in each; and proceeding thus, " doth grant, bargain and sell, " alien, enfeoff, release and confirm unto the said *John* " *Hutchinson*, his heirs and assigns, all those three tracts of " land above described, containing in the whole nine hun- " dred and ninety-one acres and a quarter, and allowance of " of six per cent. for roads, &c. *be the same more or less*," with a covenant against incumbrances " done or suffered " by the grantor."

1813.

SMITH
v.
EVANS.

*Alexander* for the plaintiffs in error, contended that they were entitled to an allowance for the deficiency, on the authority of *Clute* v *Robison* (*a*), *Sugden* 200., *Finch.* 80., 2 *Cha. Ca.* 195.

*Forward* contra, relied upon *Boyd* v. *Bopst* (*b*), *Sherwood* v. *Salmon* (*c*), *Bayly* v. *Merrel* (*d*), 1 *Pow.* on *Cont.* 238. 423., *Russel* v. *Gulwel* (*e*), *Mann* v. *Pearson* (*f*), and *Higgins's case* (*g*).

TILGHMAN C. J. It appears by a receipt from *C. Evans* to *John Hutchinson*, deceased, for 63*l.* 15*s.* dated 22d *June* 1797, that the former had sold to the latter three tracts of land, surveyed but not patented, containing 981¼ acres and the usual allowance at 12*s.* 6*d.* an acre; one half to be paid within two months from the date of the receipt, and as soon as *Evans* should make *Hutchinson* a legal title to the said lands in fee, *Hutchinson* was to give him bonds with warrant of attorney to confess judgment, and also a mortgage on the said lands for the remainder of the purchase money, with interest, one half to be paid in one year, and the other half in two years from the 27th of *May* 1797. On the 1st and 8th of *March* 1798, *Evans* obtained patents for the said three tracts in his own name, and executed a conveyance of them to *Hutchinson* in fee on the 23d of *March* 1798. In this conveyance they were described by courses and distances &c., according to the patents, and were said to contain 991¼ acres and allowance of six per cent for roads &c., *be the same more or less.* On the 24th of *March* 1798, *Hutchinson* gave his bonds to *Evans* for the balance of the purchase money then remaining due, with a mortgage on the said three tracts of land, said to contain 991¼ acres, and described by courses and distances. It has been ascertained by a survey, made 31st *March* 1810, that the quantity contained in the three tracts, falls short of 991¼ acres, by the quantity of 88 acres and 48 perches, and the question is, whether the defendant shall have an allowance for that quantity at the rate of 12*s.* 6*d.* an acre.

| | | |
|---|---|---|
| (*a*) 2 *Johns.* 613. | (*d*) *Cro. Jac.* 387. | (*f*) 2 *Johns.* 37. |
| (*b*) 2 *Dall.* 91. | (*e*) *Cro. Eliz.* 657. | (*g*) 6 *Co.* 45. |
| (*c*) 2 *Day.* 128. | | |

There is no doubt but the parties at the time of making the contract, took for granted that the three tracts contained 991¼ acres, and fixed the total price on an estimate of that quantity at 12s. 6d. an acre. But whether that quantity was an *essential* part of the agreement, or *only descriptive*, is not so clear, because both parties knew that the lands had been *officially surveyed*, the agreement had reference to that survey, and no provision was made for another survey. I give no opinion however on the case as it would have stood on the contract expressed in the receipt, unattended with any other acts showing the intent of the parties, because my opinion is founded in part on other acts. If *Hutchinson* had supposed, that he was to pay for the quantity of land whether it was more or less than 991¼ acres, he should have taken some steps to have it ascertained. On the contrary he did nothing, but suffered *Evans* to proceed to obtain patents and execute a conveyance of the whole to him, by courses and distances, whether the same should be more or less. By accepting this deed and executing a mortgage, it appears to me, that the agreement, so far as concerned the *quantity*, was closed, both parties consenting to estimate it at 991¼ acres. Had there been a *surplus*, it is not pretended that *Evans* was to have received any thing for it. Can it be supposed then, that he consented to so unequal a contract, as to make good a deficiency without receiving any compensation in case of surplus? It is well enough known that original surveys generally contain *more* than the estimated quantity. To take the quantity upon the estimate then is in favour of the purchaser, and such I conceive to have been the real intent of the parties manifested by all their acts considered together. The case of *Mann and Toles* v. *Pearson, in the Supreme Court of New York,* (2 *Johns.* 37.) is somewhat similar to the present, but much stronger. There the defendant had promised to grant and convey to the plaintiffs, "*lot No. 78 in the "township of Lysander containing* 600 *acres.*" The defendant did convey to the plaintiffs the lot, describing it as containing 600 *acres more or less.* It was held, that this was a performance of the agreement, although it turned out that the quantity was but 421⅓ acres. What weighed much with the Court was, that upon the construction contended for by the grantee, he might get *more*, but could not get

1813.

SMITH
*v.*
EVANS.

*less* than 600 acres, which is too unreasonable to be supported unless clearly expressed. I am of opinion that *Hutchinson* was bound to pay the whole sum mentioned in his bonds and mortgage, and therefore that the judgment should be affirmed.

YEATES J. I am so unfortunate as to differ in opinion from my brothers in this case. I have revolved the matter in my mind as carefully as it was in my power to do, and on the fullest reflection can see no reason for changing the sentiments which I had formed after hearing the argument. It becomes therefore my duty to declare openly the reasons of my dissent.

The question submitted to the Court is, whether under all the circumstances of the case as stated, the executors of *Hutchinson* ought to be allowed a credit upon the mortgage for the 88 acres and 48 perches of land, really deficient of the quantity agreed to be sold? We are not called upon to decide, whether if the principal and interest secured by the mortgage had been fully discharged, the executors would have any legal remedy for the supposed loss of quantity.

It is not denied that in a suit on a bond or mortgage, the want of consideration may be shewn on the part of the defendant. It is matter of daily practice to give such evidence, either to avoid the whole or part of the sum demanded, on the plea of payment, upon giving notice of the special matter intended to be insisted on, in order to prevent surprize.

The case before us naturally divides itself into two heads: 1. What was the original contract, and its legal operation? 2. Has it been changed or modified by any subsequent act?

1. The nature of the contract is as precisely ascertained as could possibly be done by any words in the *English* language, by two receipts specially penned and subscribed by the vendor himself. The first paper states a sale of three tracts of land on the waters of *Black Legs* creek containing 991¼ acres *at* 12*s.* 6*d. per acre*, carrying out the amount 619*l.* 10*s.* 6*d.* and the times of payment, and acknowledges that 63*l.* 15*s.* had been paid thereon upon the 7th of *June* 1797. The second paper also states the sale at 12*s.* 6*d. per acre*, and the time of payment, calling the quantity sold 991¼ acres;

but it also mentions the warrants on which the lands were surveyed, and the contents of the different surveys are expressed in the case, amounting to 991¼ acres. It follows therefore that the quantity was mistaken in this receipt for 63*l*. 15*s*. dated *June* 22d 1797, and if any doubt could remain, it would be fully obviated by the words of the conveyance and mortgage, which respectively denominate the contents as 991¼ acres. Articles of agreement with the solemnity of seals could not have rendered the contract more certain. It began in *May* 1797, but the deed and mortgage were not executed until *March* 1798. Twelve years afterwards the fact was verified, that the true area of the lands sold was 903$\frac{1}{10}$ acres, leaving a deficiency of 88 acres, 48 perches. It is not however denied, that in the first instance the object of the contracting parties was that the one should sell and the other should buy 991¼ acres. Whether the error arose from a mistake in the admeasurement of the lines, or from incorrectness in the calculation, we are not informed, but no fraud or deceit in the transaction, has been imputed to the vendor. I fully agree that where there has been a conveyance of lands by courses and distances, which truly describe the premises, for a gross sum, but the quantity expressed to have been transferred proves deficient, and there is no express covenant insuring such quantity, the vendee cannot without *other proof* recover damages against the vendor. Such was the resolution of this Court in *Dagne* v. *King. et uxor*, in *January* term 1794, which has obtained in other cases in this state. Under such circumstances the seller could obtain no satisfaction for the surplus quantity, and the buyer should be in no better situation, where there happens a deficiency. The same principle may be extracted from other decisions in our sister states, as in *Mann* and *Toles* v. *Pearson*, 2 *Johns.* 37, and in *Jackson, Lessee of Staring* v. *Difendorf*, 1 *Caines* 493, in *Massachusetts*, in *Howe et al.* v. *Bass*, 2 *Tyng* 383, and in *Powell* v. *Clarke*, 5 *Tyng* 355, and in *Connecticut*, in *Snow* v. *Chapman*, 1 *Root* 528. Fraud and circumvention on the part of the vendors have always been held to form exceptions from the general rule, but nothing of that kind is imputed here. I take the law to be equally clear that where lands are sold at so much per acre, and there is a deficiency

in the number conveyed, the purchaser will be entitled to a compensation, although the estate was estimated at that number in an old survey. *Sir Cloudsley Shovel* v. *Bogan*, 2 *Equ. Abr.* 988., *Sugden's Law of Vendors* 201. Fair contracts accompanied with due legal forms are equally obligatory in good morals as well as law, whether they respect realty or personalty; and I can see no solid distinction in reason or justice between a vendee of lands by the acre, being obliged to pay his money for a larger quantity of lands than he can procure under his contract, and the purchaser of three boxes of linens containing so many yards at one dollar per yard, obtaining credit on his bond for a deficiency in the quantity of yards contained in the boxes. It has been strongly urged, that there would be a want of reciprocity in this instance, if the vendee could recover for a deficiency in the land, and the vendor could have no compensation in the case of an excess. To this observation I have several answers. It is the fault of the vendor if he has made an improvident bargain. It has frequently occurred that a vendee of lands has legally withstood the payment of the full amount of his bonds, where for part of the lands sold no good title could be conveyed to him, and yet the same vendee having paid the full consideration money, would have no right of action to recover back such part of the money as was proportioned to the lands, for which the title was defective, by reason of the covenants on the part of the vendor not being sufficiently extensive. Besides if we may trust to *Sugden* (*p.* 202) a court of equity would relieve a vendor where more land has passed than was contracted for, which would fully remove the objection. Equity forms a part of our law, there being no court of chancery in this Commonwealth. To this I will add, that this is not the first instance which I have known, wherein the seller of lands has engaged, that the tract sold should contain a certain number of acres, or that a diminution should be allowed in the price, and yet has made no provision to be paid for the surplus quantity, in case it should so happen.

2. The counsel of the defendant in error has insisted that the acceptance of the deed of 23d *March* 1798, by the plaintiff's testator, *ipso facto* changed the rights of the parties, by an alteration of their relative situation, and discharged

*Evans* from all responsibility for the quantity of land originally contracted for, it being the full consummation of the agreement. To this I cannot accede in the broad and extensive sense of the conclusion. I readily admit, that the receiving of the deed without objection made at the time, of the want of proper covenants to insure the number of acres contracted for, might be given in evidence to a jury upon the trial of the issue to shew an intended alteration of the first stipulation. But that fact *standing alone*, would produce no conviction in my mind, either as a judge or juror, that the liability which once existed was thereby released. We are bound to say from the written expressions of Mr. *Evans*, that the sale was made by the acre. Both parties acted under a belief that the area of the three tracts contained 991¼, and the usual allowance of six per cent. The real contents were not ascertained until the lines were traced and measured on the 31st of *May* 1810, under a rule of Court. Can it then be said that the *mere acceptance* of the conveyance, under mutually erroneous impressions, rescinded the former binding agreement? Where was the union of two minds to effect this change? I can see nothing in the case from which I can safely infer that *Evans* meant thereby to modify the contract; and much less that *Hutchinson* could be induced to assent thereto without some equivalent. The ground of the defendant's argument resolves itself into a question of fact which would more properly be tried by a jury, who would I think have little difficulty thereon.

Upon this point, I bottom my opinion on the uniform practice of the Courts of *Pennsylvania*, as declared in *Swift* v. *Hawkins* et al. (1 *Dall.* 17.) in 1768, which had prevailed many years before; that in order to prevent a failure of justice, the obligors of bonds had been let in under the plea of payment to prove mistake or want of consideration. I will exemplify my ideas on this subject by a familiar instance. The owner of land agrees to sell and convey by a good title 500 acres to another, in consideration of five dollars per acre, payable by instalments. Part of the money is paid down, bonds given for the residue, and a deed delivered without any covenant for the goodness of the title, or the quantity of land. They act in the whole transaction with

Smith
v.
Evans.

perfect good faith toward each other; but it eventually happens that the vendor had not a good title as to 100 acres, part of the lands agreed to be sold, or that the tract contained only 400 acres. One of the bonds is put in suit, and the vendee claims an allowance for the 100 acres, whereof the title is defective, or the tract deficient in quantity. What little experience I have had, induces a confident opinion, that neither a Court nor jury would sanction the recovery of the full consideration money in such a case. And yet I freely confess, that if under this state of facts the whole money had been paid and the transaction closed, I know of no legal mode whereby any part of the money could be recovered back.

It is well known that bonds are not executed for lands sold until the title is transferred to the obligor; and of course it follows, that a conveyance must precede the litigation of the obligations. But the doctrine of the defendant's counsel on this branch of the case goes to the full extent, that however aggrieved a purchaser of lands may be, by the seller's non-performance of his original contract, if the deed be once executed and delivered to the former, and it contains no proper and apt covenants obliging the seller to adhere to his first agreement, he is discharged therefrom, though both parties were evidently under a mistake when the conveyance was made. It affects to establish a principle that the formality of a deed wholly purges a breach of contract, though not so intended at the time by either party, and mellows *into right* an unequivocal *wrong*. I know of no imperious rule of law which enjoins us to attribute such efficacy to a conveyance; on the contrary, I know from our books, that it is the peculiar province of a court of equity to relieve against mistakes, and that in some instances parol evidence has been admitted to correct written papers. 1 *Vez.* 318. 457. The objection found in some of the cases at law, that the party should resort for redress to the chancellor, is not applicable to the local circumstances and judicial tribunals of this Commonwealth.

Even admitting the deed before us to have a much stronger influence on the merits of the case than I am willing to allow it, I apprehend that the words "more or less" as applied to the 991¼ acres conveyed thereby, have been

construed by the defendant's counsel in a sense unwarranted by the laws. According to *Day* v. *Finn*, *Owen* 133, *cited in* 9 *Vin. Abr.* 343. *pl.* 10. " *sive plus sive minus*," shall be intended of á reasonable quantity, *more or less* by a quarter of an acre, or two or three at the most. The words must naturally refer to the extent of the grant. Thus in *Quesnel* v. *Woodlief et al.* cited in 2 *Hen. & Munf.* 173. (*note*), it was decided that those expressions in a deed must be restricted to a reasonable or usual allowance for small errors in surveys, and for variations in instruments; and in *Nelson* v. *Matthews et al.* in the same book and page, it was adjudged that a deficiency of eight acres in a tract of 532 acres, was no more than a purchaser who buys *for more or less*, might reasonably expect, but that it was otherwise as to a deficiency of 20 acres. It cannot therefore be said here that a title for $903\frac{1}{10}$ acres could be deemed equivalent to $991\frac{1}{4}$ acres, although the words " more or less" are inserted in the conveyance.

Upon the whole, I am of opinion that the personal representatives of the mortgagor are entitled to an allowance for the deficiency of the lands conveyed, upon the usual practice of our courts, as well as upon principles of law, equity and common honesty, and that the judgment entered in the court below for the defendant in error, by consent, but without prejudice, be reversed.

BRACKENRIDGE J. At the original contract in this case, there would appear to have been before the parties, the three separate drafts of the surveys of the three adjoining tracts, the three official drafts as surveyed upon the ground and returned into the office, the courses and distances of these with the calculated quantity returned into the office, and upon which three separate tracts, according to the quantity calculated, patents afterwards issued. The sale of these tracts was according to the courses and distances, and I must infer, according to the calculation of the official surveys within those courses and distances. In such a case is it ever understood, unless specially provided for, that there is to be a remeasurement, in order to ascertain whether the distances fall short, or a recalculation, in order to ascertain whether the quantity according to such courses and distances

will hold out? The inconvenience of such an understanding, and the uncertainty of surveys at different times and by different chain carriers, would lead to litigation. Were I to refer to what I know to be the understanding of the country, it is that in the case of official drafts in all contracts, unless specially stipulated, the quantity is taken according to the official calculation, and no idea is ever entertained of a remeasurement or a recalculation.

Is there any thing special in this contract which would lead to the idea that a remeasuring and recalculation were intended? There are the words, twelve shillings and six pence an acre. This it is clear to me was nothing more than the result of looking to the sum for which the purchase was to be made, and comparing it with the reputed quantity or number of acres; it was estimated to be at that rate, twelve shillings and six pence an acre. But it would seem to me to be a purchase in bulk, and the words "less or more" would refer not only to the quantity of acres actually comprehended in these courses and distances, but to this quantity at twelve shillings and six pence an acre, making up the sum which was to be given for the whole in bulk. I would take the terms expressly to mean, that whether less or more in quantity, the drafts were to govern, and the twelve shillings and six pence an acre had a reference to that computation. There are three tracts of ground as described and computed, for which I must have so much money in the whole. But I cannot have so much money in the whole if it is to be reduced by a deduction. And we all know that the mere quantity of acres in this country in a purchase is but a small consideration, compared with the laying and general advantages of the whole. I cannot construe this writing so as to think that the twelve and six pence mentioned can affect the stipulated sum to be given for the whole, taken for more or less as it then appeared. Not that I think the more or less to be applied to the twelve shillings and six pence necessary, or perhaps intended, but taken strictly it might be so referred. But whether or not, my construction would be the same.

There is a class of cases in this country that is springing up and begins to be talked of, whereon an accidental experiment or running of a line, or where in consequence of a division amongst minors and valuation by the acre, the

surveys are found to contain less or more; and where an intimation of a computation of the purchase money from the number of acres, has unadvisedly, because unnecessarily, got into a *mesne* conveyance, claims to refund or set off may be advanced. I have heard of some of them which this very controversy has awakened, and which await our decision. I concur with the Chief Justice.