## HAGGERTY *against* FAGAN.

<div style="margin-left:auto">2pw533<br>197 438</div>

A, by articles of agreement, sold to B a tract of land, containing a certain number of acres and perches, and subsequently executed a deed of conveyance therefor, and received B's notes, and a mortgage, to secure the payment of the purchase money; upon a suit brought upon these notes, it was held, that B could not avail himself, as matter of defence, that there was a deficiency of eleven acres, and one hundred and twenty-three perches, in the quantity of the land conveyed. The articles of agreement, were merged in the deed.

Writ of error to the Common Pleas of *Centre* county.

This was an action of debt upon three single bills, due 1st August, 1820-'1 and '2, brought by *Harman Fagan*, for the use of *George Wilson* against *Joseph Haggerty*. The defendant to support his plea of payment, with leave, &c., gave in evidence, articles of agreement between him and *Fagan*, dated the 13th December, 1811, by which *Fagan* agreed to sell to *Haggerty* "the plantation on which he lives, containing one hundred and seventy-one acres, twenty-eight perches, for the consideration of $24 50 per acre."

A short time before this contract was made, a partition line was run between *Fagan* and *Spencer*, who before that, were owners of a large tract.   A draft was then made of the partition, by which it appeared that the part allotted to *Fagan* contained one hundred and seventy-one acres, twenty-eight perches.    On the 21st July, 1812, deeds of partition were executed, and delivered by *Fagan* and *Spencer* respectively to each other; and on the same day *Fagan* executed a deed to *Haggerty* for the land sold to him, to wit: one hundred and seventy-one acres, twenty-eight perches; and *Haggerty* executed the notes, upon which this suit was brought, and a mortgage to *Fagan,* of the land conveyed, to secure their payment.   In 1823, *Haggerty* procured a survey to be made of the land by which it appeared, that the partition line between him and *Spencer,* as marked upon the ground, did not correspond with the draft, with the deeds of partition between *Fagan* and *Spencer,* or the deed from *Fagan* to *Haggerty,* and that there was really but one hundred and fifty-seven acres, fifty-seven perches, in the tract sold by *Fagan;* so that there was a deficiency of eleven acres, one hundred and twenty-three perches.

The court below *(Burnside* president) was of opinion that the defendant could not avail himself of the facts given in evidence, as matter of defence, and so instructed the jury, who found a ver-dict accordingly.

In this court the following errors were assigned:

1. The court erred in instructing the jury, that the defendant could be allowed no deduction on his notes, for the deficiency of eleven acres and one hundred and twenty-three perches of land, in the tract bought by him of the plaintiff.

2. In instructing the jury, that the acceptance of the deed and giving the mortgage, precluded all inquiry as to the deficiency of the quantity of land agreed to be conveyed by the article of agreement, to the defendant.

3. In instructing the jury, that although *both parties* were mistaken, as to the quantity of land conveyed by deed to *Haggerty,* and that this mistake arose in the deed of partition between *Fagan* and *Spencer,* yet no deduction could be made for the deficiency of land in consequence of such mistake.

The reporter was not present at the argument of this cause.

*Blanchard* for plaintiff in error.

*Potter* for defendant in error.

The opinion of the court was delivered by

KENNEDY, J.—The first and second errors assigned are substantially the same, and relate to that part of the Judge's charge in the

(Haggerty *v.* Fagan.)

court below, in which he told the jury, that the law was against the defendant, that is, the plaintiff in error; inasmuch as he had closed the articles of agreement, by accepting a deed of conveyance, and giving his bonds and mortgage for the payment of the balance of the purchase money. The rule laid down by the Judge, appears to be pretty well established, not only by the case of *M'Dowell* v. *Cooper*, in 14 *Serg. & Rawle*, 296, to which he referred, but in many others. Judge *Duncan*, who delivered the opinion of the court in *M'Dowell* v. *Cooper*, says, page 299, "The articles had discharged their office when the conveyance was accepted, and the bonds and mortgage given. There being no warranty as to quantity in the deed, the quantity would be matter of description, not a covenant, that the described land should contain the exact quantity to one acre, or to eight acres, in a conveyance of four hundred acres. I do not speak of a deficiency to a great amount, entering from its magnitude, into the very heart and essence of the contract." Near the foot of the same page, he says: "There was error in the court leaving it to the jury, to decide whether there was any thing, any fact in the cause trying, to make it an exception from the general rule of law, that the conveyance and bonds conclude the parties; because there was no evidence of any fact, which could vary it from the common case, of the execution of the articles, by accepting a conveyance, and giving bonds and mortgage; any thing which would leave the articles in full force, and thereby entitle the purchaser in an action on the bonds, to an allowance for these eight acres, to be deducted from the bond, in the same manner as he might in a suit on the articles." In the case of *Smith* and *Evans*, 6 *Bin.* 102, where by the agreement, the sale was of "three tracts of land, containing nine hundred ninety-one acres and a quarter and allowance, at twelve shillings and six pence per acre," and afterwards part of the purchase money having been paid the plaintiff, who was the seller, made a conveyance to the purchaser describing the lands by courses and distances, and as containing the same quantity and allowance, be the same more or less, and the purchaser gave his bonds and mortgage on the same lands, for the payment of the balance of the purchase money. Upon a survey made twelve years afterwards, the tracts were ascertained to fall short eighty eight acres and forty eight perches; yet it was held, that the defendant was not entitled to any deduction from his bonds, on account of the deficiency. Chief Justice *Tilghman* in this case, in page 107, in delivering his opinion, says: "By accepting the deed and executing the mortgage, it appears to me, that the agreement, so far as concerned the quantity, was closed, both parties consenting to estimate it at 991¼ acres. Had there been a surplus, it is not pretended that *Evans* was to have recei-

ved any thing for it." Again the same Chief Justice, in delivering the opinion of the court in *Crotser* and *Russell*, 9 *Serg. & Rawle*, in page 80, says: "The deed of conveyance is the consummation of the agreement and shall be taken for the ultimate intent of the parties, and prevail over the articles." In *M'Clelland* v. *Cres-wall*, 13 *Serg. & Rawle*, 143, the vendee by the articles of agreement, covenanted to pay sixteen dollars for each and every acre, of the tract therein described, as containing four hundred and twenty-nine acres and seventy-nine perches, with allowance. The conveyance was taken for the same number of acres, as set forth in the articles. The land however, was measured afterwards, and found to contain but four hundred and twenty acres, one hundred and thirty-seven perches. It was held, that the purchaser could claim no deduction from his bond given for the purchase money on account of this deficiency, and Justice *Duncan*, who delivered the opinion of the court, said: "I would consider the acceptance of the conveyance, and the patent and giving the bonds as an agreement on both sides, to abide by the estimated quantity in the official survey and patent, be the same more or less, and would not open the contract for future strife where the difference was so small as would be found on the re-survey of very many official surveys and returns." And in *Bailey* v. *Snyder*, 13 *Serg. & Rawle*, page 162, where Chief Justice *Tilghman* considered the agreement for the sale of the land, as one made at twenty dollars per acre, no gross sum being mentioned, nor definite boundaries given of the land, yet he applies the same general rule to such a case as that was, when the contract appeared to have been closed, by taking a deed of conveyance, and giving bonds for the purchase money; fixing the amount according to the estimated quantity, without any re-survey or reservation, to have the sum changed upon the real quantity of land, being ascertained to be different from the estimated quantity. He uses the following words: "When the articles of agreement have been carried into effect, by a conveyance from the vendor and bonds for the purchase money from the vendee, without a survey, then in general the contract is considered as closed. And it is fair, and very much for the public good, that it should be so considered; otherwise there would be no end to controversy. I say this is the general rule, but there may be extreme cases, which must be excepted; cases for instance, in which the real differs so much from the estimated quantity of land, as to make it evidence that both parties are under a misapprehension, or one of them guilty of a gross fraud." And *Duncan* Justice in delivering the opinion of the court, in *Frederick* v. *Campbell*, 13 *Serg. & Rawle*, page 141, says, "I do not think in a common case, when the vendor could not recover for the excess, that the vendee is entitled to

(Haggerty *v.* Fagan.)

an allowance for the deficiency.    For in that case, though the sale were even by the acre, I would consider the vendee as agreeing to take it by the survey, as fixing the quantity: and where there is no fraud or concealment, that he is not entitled to any deduction." And after making some observations, he continues: "There might be extreme cases, where a court of chancery would grant relief, evidencing *ex natura rei* a misapprehension, where the deficiency would be so great as at the first glance, every man must say there must have been, a gross misapprehension or fraud.

The same principle is recognized by the Supreme Court of New York, in *Houghtuling* v. *Lewis*, 10 *Johns. Rep.* 297, where it was decided that the acceptance of a deed, in pursuance of articles of agreement, is to be deemed *prima facie* evidence of executing the contract, and that the agreement thereby becomes void, so that no action can be maintained on any of its covenants.    In the case of *Twyford* v. *Wareup, Finch. Rep.* 210, the court say, "That the articles were only a security, and preparatory to the conveyance, and the defendant having afterwards taken a conveyance, shall not resort to the articles or to any particular, or to averment or communication afterwards; for such things shall never be admitted against the deed."    In *Stebbins* v. *Eddy*, 4 *Mason's C. C. Rep.* 414, the parties entered into a written contract, whereby the defendant sold to the plaintiff a farm, and agreed to execute a deed for the same, in six weeks; the plaintiff agreed to pay for the same, at the rate of fifty dollars per acre, and a survey thereof was to be made, to have the quantity exactly ascertained.    At the time of the contract the defendant affirmed his belief, that the farm contained fifty acres, if not more, and repeated the same at the time of executing the deed of conveyance, which was done afterwards, but without any survey having been made; and the gross sum of two thousand five hundred dollars, was inserted in the deeds as the consideration. These deeds were accepted of by the plaintiff, who paid the whole of the two thousand five hundred dollars.    The farm, afterwards, upon a survey being made of it, was found to contain only forty and a half acres, falling short nine and a half acres of the quantity represented by the defendant.    The plaintiff brought his bill to obtain compensation for this deficiency, at the rate of fifty dollars per acre.    The farm was conveyed by metes and bounds, and the boundaries of it were known to both parties. The defendant denied the fraud and misrepresentation charged in the bill; and admitted that he had at the time of the original contract, as well as at the time of executing the deed of conveyance, represented to the plaintiff, that the farm contained in his belief, fifty acres and upwards, which was really his belief, but "that at the time of the final negotiation, the original contract of sale at a

(Haggerty *v.* Fagan.)

specific sum per acre was rescinded, and that the bargain was com-
pleted at the gross sum of two thousand five hundred dollars." Of
this however, there was no evidence besides the allegation of the
defendant, except the execution of the deeds of conveyance, con-
taining as their consideration, the sum of two thousand five hun-
dred dollars; and the acceptance of them by the plaintiff, without
any survey having been made. There was no evidence to show
that the defendant knew, or had any reason to believe that the farm
did not contain fifty acres, as alleged by him. The plaint-
iff's bill was dismissed. Justice *Story,* who delivered the opin-
ion of the court, after approving highly of the principle alrea-
dy noticed, and laid down by the late Chief Justice of this state in
the case of *Smith* v. *Evans,* says: "My judgment accordingly, is
that the original contract of sale, at fifty dollars by the acre, was so
far waived or modified by the parties, that the number of acres did
not form the basis of the ultimate conveyance, but the farm was
purchased upon an estimate assumed by the parties, and at a gross
sum."

Now, according to the principles laid down in the cases referred
to, it is manifest there was no error in that part of the charge of
the court, to which the first and second errors have a reference. In-
deed I do not consider it, altogether clear and certain from the face
of the articles, that the parties ever intended to have any other sur-
vey made than the one, which had been made previously, and
according to which, the quantity appeared to be one hundred and
seventy-one acres, and twenty eight perches. As they made none
afterwards, it might perhaps be inferred, that they did not intend
it at any time. In the nature of the thing itself, it cannot well be
otherwise, than that every man in selling as well as in buying land,
if it be of value for agricultural purposes, must have some regard to
the quantity, and from his estimate of the quantity, he will be gov-
erned as to the price he will take or give, whether it be named as a
gross sum or so much per acre. A survey of the land, had been
made, before the articles of agreement were entered into, and the
land itself therein described by metes and bounds shewing, that a sur-
vey had been made; and no provision made for a future survey, and
these parties afterwards, without making any such survey, and
without any reservation that we know of, consummated their agree-
ment by *Haggerty's* taking a deed from *Fagan,* setting forth the
same quantity in the deed as mentioned in the articles, and descri-
bing the land by metes and bounds; and by giving his bonds and a
mortgage, for the payment of the balance of the purchase money,
which was computed according to the quantity mentioned in the ar-
ticles, and in the deed. This is a practical construction, put by the
parties themselves on the articles of agreement, which goes far to

show, that they intended originally by it, to take the quantity and price per acre, therein mentioned as the data for ascertaining the gross sum that was to be paid for the land. "By the acceptance of the conveyance, the parties put their construction on it, (meaning the agreement,) says Judge *Duncan* in *Fredrick* v. *Campbell,* 4 *Serg. & Rawle,* 140. Every thing seems to have been perfectly fair and honest, as well in making the contract as in executing it. Fraud is not alleged or pretended. The difference between the real and estimated quantity of land, is not such as for a moment to suggest such an idea as fraud; nor yet to exclude the idea, that the parties did not agree to take their chance of the whole quantity, being more or less than the ascertained difference. Nor can it be said, that the difference is "so great as at the first glance every man must say, there must have been a gross misapprehension." *Haggerty* rested well satisfied, for eleven years after he received his deed of conveyance, and his bonds having become payable during the interim, he paid interest upon them up to 1823, without any objection. It is clear under the circumstances of this case, that if it had turned out that there was an excess of eleven or twelve acres, instead of a deficiency, the plaintiff in error could not have been compelled to pay for it: and if so, he can have no claim to the deduction claimed: for if there be an obligation or right in this particular, it must be reciprocal and mutual.

There is nothing in the third error. It is difficult to conceive upon what principle the judge below should have instructed the jury, as the defendant's counsel there requested, that if they believed, that the deficiency had arisen from the error and mistake of the surveyor, in making the partition between *Fagan* and *Somers,* and that *Spencer* had thereby got eleven acres, and one hundred and twenty-three perches more than he ought to have had, they ought to make a deduction for it from the amount of the defendant's bond. I am altogether at a loss to see how this could change the nature and operation of the agreement and execution of it between these parties. Neither can the ignorance of the parties as to this mistake of the surveyor, give any right to the deduction claimed, but seems rather to be a reason why it should not be allowed, because it is clear evidence of *Fagan's* honesty in the sale of the land to the plaintiff in error; and as he has succeeded to all *Fagan's* right to the land which was held at one time jointly by *Fagan* and *Somers,* if it be not too late, he might possibly claim to have this error corrected with *Somers.* At all events, it appears to me that *Fagan* has no right now to claim a correction of it, having parted with all his right to *Haggerty.*

These remarks will apply to the fourth and last error. There was surely no error in the judge saying as he did to the jury with

(Haggerty *v.* Fagan.)

respect to these two last points, which are closely allied to each other, that taking the deed of conveyance, and giving his bond and mortgage for the payment of the balance of the purchase money, and suffering eleven years to pass by without any objection, paying interest on the bonds and procuring indulgence from the holder of them, it was too late to have the whole original matter canvassed, and the error corrected.

The judgment must be affirmed.