## Kreiter *versus* Bomberger.

| 82 | 59 |
|----|----|
| 126 | 365 |

| 82 | 59 |
|----|----|
| 187 | 107 |

| 82 | 59 |
|----|----|
| f197 | 437 |

| 82 | 59 |
|----|----|
| 24 SC | ²219 |

| 82 | 59 |
|----|----|
| 34 SC | ³174 |

1. Upon a question of fact raised as to whether a party plaintiff had agreed to look to the maker of a note and not call upon his co-endorsers, representations made by the plaintiff as to the means of the maker, are relevant and admissible.

2. Where a party to a suit is a witness in his own behalf, his admissions out of court, though contradicting his evidence, may be proved, without first calling his attention to them, as in the case of other witnesses.

3. Where a sale of land is consummated by payment of the consideration and delivery of the deed, there can be no recovery for deficiency without proof of fraud or mutual mistake. Deficiency, if it be very great, though evidence of fraud, is not of itself sufficient.

May 4th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Lancaster county:* Of May Term 1876, No. 82.

This was an action of assumpsit, brought by J. M. Kreiter, against I. F. Bomberger, for contribution.

The note, the foundation of the suit, was in form as follows:—

$2200.                                     Litiz, January 26th 1871.

Sixty days after date I promise to pay to the order of John S. Hostetter, Isaac Bomberger, Charles R. Kreiter and J. M. Kreiter,

[Kreiter *v.* Bomberger.]

at "The Litiz Deposit Bank," twenty-two hundred dollars, without defalcation, for value received.          C. W. KREITER.

Credit the drawer.

JOHN S. HOSTETTER,
ISAAC F. BOMBERGER,
CHARLES R. KREITER,
J. M. KREITER.

Endorsed: "John S. Hostetter, Isaac F. Bomberger, Charles R. Kreiter, J. M. Kreiter."

The note was discounted by Bair & Shenk, bankers, unpaid at maturity, protested, lifted and paid by J. M. Kreiter, and suit brought by him against the defendant Bomberger for one-fourth in contribution.

On the trial, before Livingston, P. J., the defence set up was two-fold.

1st. That Kreiter promised Bomberger before he endorsed the note, that he, Kreiter, would pay the note at maturity, and that Bomberger should not be called on for contribution.

2d. By way of set-off, that Kreiter had sold Bomberger a piece of ground in Warwick village, containing, as represented by Kreiter in the deed, 242 feet 4 inches front, and in depth 200 feet, containing one acre and a half, more or less, which upon actual measurement contained 52 feet 8 inches less in front, the deficiency extending through its entire length, reducing the area to less than an acre, for which he paid $6000, and claimed damages for the deficiency. It was a sale consummated by payment, delivery of deed, and possession of the vendée under it.

There was conflicting testimony as to the first point, and in the course of the trial the testimony of Hostetter was admitted as to representations made by the plaintiff as to the means of the maker of the note, to which exception the first was taken.

It seems that it was a conversation that took place while Bomberger was not present, yet being declarations as to his opinion of the maker's means and ability to meet the note, were held relevant and admissible upon the question of fact raised as to whether the plaintiff had agreed to look to the maker and not call upon his co-endorsers, and that without his attention having been first called to them in his examination.

The jury, however, found for the plaintiff upon this fact, that he had not done so, but allowed the set-off of damages for deficiency of land, reducing the verdict from $676.24, as it would have been upon the first finding, to $215.59, for which amount they gave a verdict for the plaintiff. The plaintiff took this writ of error.

The error assigned to the ruling of the court below was to the admission of the evidence of the sale of the lot and its deficiency of area, and the instruction of the court thereupon, that if the jury should find the difference between the *represented*

[Kreiter *v.* Bomberger.]

and *real quantity very great*, so great as to be a fraud upon the defendant, they should ascertain what damage the defendant sustained by reason of such deficiency and allow as a set-off such sum as they found such damage amounted to. There was no other evidence of fraud than such as might be inferred from the extent of the deficiency.

*D. McMullen*, for plaintiff in error.—Where lands are described by courses and distances, and also by adjoiners, the latter, where there is a discrepancy, govern: Cox *v.* Couch, 8 Barr 147 ; Petts *v.* Gaw, 3 Harris 222; Brolaskey *v.* McClain, 11 P. F. Smith 163.

*William R. Wilson*, for defendant in error.—The evidence under the first error was clearly admissible to contradict the plaintiff's testimony, tending to prove in effect that at that time the drawer had been insolvent. Neither vendor nor vendee having been in possession of so much of the lot as was lacking, this was a constructive eviction *pro tanto :* Rawle on Covenants 157; Marston *v.* Hobbs, 2 Mass. 433 ; Wilson *v.* Cochran, 10 Wright 229. It is matter of set-off: Hunt *v.* Gilmore, 9 P. F. Smith 450. Rule as to discrepancy applies whether contract is executed or executory: Coughenour's Adm'rs *v.* Stauft, 27 P. F. Smith 195. *More* or *less :* 1 Sugden on Vendors, notes to p. 490 ; Smith *v.* Fly, 24 Texas 345 ; 4 Kent 467. Equity will relieve in case of gross mistake as to quantity.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 22d 1876.

The first assignment of error might be dismissed with the remark, that as the jury found for the plaintiff upon his claim for contribution on the note of which the defendant was a joint payee and endorser with him, it evidently did him no harm. Yet as the case must go back for another trial, it may be proper to say that upon the question of fact raised by the defence, that the plaintiff had agreed to look to the maker and not call upon his co-endorsers for contribution, his declarations as to his opinion of the maker's means and ability to meet the note were relevant and admissible. It is clear that though a party has been examined in his own behalf as a witness, his admissions out of court, though contradicting his evidence, are admissible without having first called his attention to them, as is necessary in the case of other witnesses. Such admissions constitute independent evidence of themselves, and are not admissible merely for the purpose of impeaching the credibility of the party as a witness, although incidentally they may also have that effect.

The remaining assignments relate to the admission of the evidence

[Kreiter *v.* Bomberger.]

of set off, claimed by the defendant and the instruction of the court to the jury upon that subject.

The right of a vendee to be allowed to recover for an alleged deficiency in the quantity of land purchased by him, as described in his deed or articles of agreement, may arise in three different classes of cases.

The first is when the agreement is entirely executory. I cannot find in our books any case in point, but in most of those which have been decided where the agreement has been carried out by a conveyance, and the giving of securities for the purchase-money, so much stress is laid upon the execution of the deed as to produce the impression that a vendee, where the articles are entirely executory, would be allowed for any considerable falling off in the quantity. Chief Justice Tilghman declined to express any opinion upon the question in Smith *v.* Evans, 6 Binn. 102. As the action to recover the purchase-money may be regarded as equivalent to a bill in equity to enforce the specific performance of the contract, it may well be concluded that the vendee ought not to be compelled to pay for more land than he actually receives, unless it appears that he understood and meant to take the risk that the quantity was as represented. The case is much plainer when the agreement is at the price of so much per acre; and even where it is for a round sum, and the quantity is qualified by the words "more or less," the deficiency should be a reasonable one, as in the old case of Day *v.* Finn, Owen 133, cited in 9 Vin. Abr. 343, pl. 10, where it is held that "sive plus sive minus" shall be intended of a reasonable quantity. Certainly very much ought to depend upon the extent of the purchase and the value of the land. This, however, is not the case which we have before us, and we do not intend to express an opinion upon it.

The second class of cases is however the more usual one: namely, where the contract has been carried out by the execution of a deed and of bonds or other securities for the purchase-money. The question has there arisen upon actions to recover on these securities. In such cases the law is well settled, that where the contract was for a round sum, or even by the acre, the vendee will not be allowed for a deficiency in the quantity, where the number of acres in the deed is stated with the qualification *more or less*, unless there be fraud, or, as is said, the difference is so very great as to show an evident mistake. The rule was stated by Mr. Justice Sergeant, in Galbraith *v.* Galbraith, 6 Watts 112, in these words: " An examination of the numerous decided cases in our own reports will, I think, show that in the common case between vendor and vendee, in a conveyance of a tract of land bounded by adjoining owners, and described as containing so many acres, *be the same more or less*, at a certain price per acre, where there is no stipulation for admeasurement, nor any *mala fides* proved, redress cannot, after the bargain is closed, be given to either party for a surplus or deficiency subsequently appear-

[Kreiter v. Bomberger.]

ing." This rule was adopted and confirmed in Hershey v. Keemborts, 6 Barr 128 ; Chief Justice GIBSON adding, " The vendor is answerable in respect of the quantity only for *mala fides*." There are indeed many dicta that the difference in the quantity may be so great as to be evidence itself of fraud or deceit, or of great misapprehension between the parties, and then equity will relieve. Though no case is to be found of an actual application of this doctrine in favor of the vendee, or to show what must be the extent of the difference to raise the presumption, yet perhaps it may be fairly conceded, that in an action to enforce the payment of purchase-money, a deduction under such circumstances will be allowed. Such is the weight of extrajudicial opinions : Boar v. McCormick, 1 S. & R. 166 ; Glen v. Glen, 4 Id. 488 ; Bailey v. Snyder, 13 Id. 160 ; McDowell v. Cooper, 14 Id. 296 ; Ashcom v. Smith, 2 Penna. R. 219 ; Frederick v. Campbell, 13 S & R. 136 ; Haggerty v. Fagan, 2 Penna. R. 533 ; Coughenour's Adm'rs v. Stauft, 27 P. F. Smith 191.

The third class of cases to which the one now under consideration belongs, is where the contract is fully executed and the purchase-money paid. We are of the opinion that in this class, the transaction cannot be ripped up, without actual proof of fraud or mutual mistake. Upon this question the greatness of the difference may be evidence, but not sufficient of itself. There must be other circumstances. Cases of this class very rarely arise. I can find but one instance in our books. That is the case of Large v. Penn, 6 S. & R. 488. There the difference was very great in reference to the extent of the premises. The quantity conveyed was described as 2¾ acres, and without the words " more or less ;" the actual quantity was, 1 acre, 148 perches. Yet the vendee was denied relief; Chief Justice TILGHMAN remarking, "It is the boundaries to which the grantee must look ; he has a right to all the land within them. The quantity is matter of calculation, and be it more or less passes. There is no express covenant that the quantity in this case shall amount to 2¾ acres. Nor is there any implied covenant, because the quantity is introduced not by way of covenant, but of description." So in Smith v. Evans, 6 Binn. 102, which was a proceeding on a mortgage, to recover unpaid purchase-money, where upon a conveyance of 991¼ acres, more or less, the quantity fell short 88 acres, 48 perches, and the vendee was refused relief; Mr. Justice YEATES, in his dissenting opinion, says : " And yet I freely confess that if, under this state of facts, the whole money had been paid, and the transaction closed, I know of no legal mode whereby any of the money could be recovered back." This distinction between cases where the purchase-money has been fully paid and the demand is to recover back part, and cases where the vendor is proceeding upon his securities to enforce full payment, is well sustained by the general principles upon which courts of equity proceed. They will not rescind a contract fully executed without clear proof of fraud

[Kreiter *v.* Bomberger.]

or mutual mistake in an essential point. They proceed upon different principles in the enforcement of contracts.

It follows that there was error committed by the learned judge below in admitting and submitting to the jury the deed from Kreiter to Bomberger, as in itself sufficient evidence of fraud or mistake, if they should think the difference very great. If it was sufficient of itself, it was a question of law for the court and not of fact for the jury. There was no evidence besides the deed to show fraud in Kreiter or mutual mistake of the parties. The vendee was well acquainted with the lot, within the boundaries described in the deed. That was the lot he bought. There was no representation by the vendor of the quantity of acres it contained. The description in the deed was most probably copied from the prior conveyances to him recited in it. Both parties made and concluded the bargain with their eyes open. The vendee threw out no anchor to windward as to quantity as he did as to title by his covenant of general warranty. If within any period short of six years from the time of the transaction, a contract of purchase and sale, fully executed by delivery of the deed and payment of the purchase-money, can be overhauled and materially changed, very disastrous consequences will ensue not only to vendors called upon to refund what they had every reason to believe was their own and had a right to deal with accordingly, but to the public at large, by sowing the seeds of an abundant crop of lawsuits.

Judgment reversed and *venire facias de novo* awarded.