## Case No. 13,342.

### STEBBINS v. EDDY.

[4 Mason, 414.] [1]

Circuit Court, D. Rhode Island. June Term, 1827.

EQUITY — MISTAKE — VENDOR AND PURCHASER — QUANTITY.

1. Where a farm is sold at so much per acre, if the quantity be mistaken by the parties, a court of equity will relieve the party injured by the mistake.

[Cited in Trinkle v. Jackson, 86 Va. 241, 9 S. E. 986.]

2. In such case the vendee has a right to take the farm at the price of the real number of

---

[1] [Reported by William P. Mason, Esq.]

acres, and to have compensation for the deficiency, if he has paid the consideration.

3. So where the sale is for a gross sum, and there is a positive representation of the quantity by the vendor.

[Cited in Farris v. Hughes, 89 Va. 933, 17 S. E. 519.]

4. But it may be otherwise, if the statement of the quantity be mere matter of description, and not of the essence of the contract: as where the contract contains the words, so many acres, "more or less," or "containing by estimation," &c.; for in such cases the vendee may take upon himself the risk of the quantity.

[Cited in Harrell v. Hill, 19 Ark. 102; Libby v. Dickey (Me.) 27 Atl. 255; Noble v. Googins, 99 Mass. 233; Tarbell v. Bowman, 103 Mass. 344. Distinguished in Belknap v. Sealey, 14 N. Y. 154. Cited in Paine v. Upton, 89 N. Y. 336; Pickman v. Trinity Church, 123 Mass. 7; Caldwell v. Craig, 21 Grat. 140; Crislip v. Cain, 19 W. Va. 496, 526; Depue v. Sergent, 21 W. Va. 333.]

5. But if there be any fraud or wilful misrepresentation of the quantity, equity will afford relief in these latter cases.

[Cited in Foster v. Swasey, Case No. 4,984.]
[Cited in Chrysler v. Canaday, 90 N. Y. 277; Morris Canal Co. v. Emmett, 9 Paige, 170.]

6. A sale was at first made of a farm upon a contract of so much per acre, to be ascertained by measurement. Afterwards the parties agreed to waive any measurement, and the vendee took the farm at the gross sum of $2500, supposing it to contain fifty acres, from the representation of the vendor; and in the deeds of conveyance the land was stated to contain forty-seven and a half acres, "more or less." *Held,* that as the vendor was not guilty of any fraudulent misrepresentation, but expressed his bonâ fide belief, the vendee was not entitled to relief in equity, although the quantity turned out, upon subsequent measurement, to be forty and a half acres only, each party having been well acquainted with the local boundaries of the farm.

[Cited in Phillbrook v. Enswiler, 92 Ind. 592; Cabot v. Winsor, 1 Allen, 551; Bradbury v. Haines, 60 N. H. 124; Davis v. Lottich, 46 N. Y. 400; Collette v. Weed, 68 Wis. 435, 32 N. W. 753.]

Bill in equity [by Artemas Stebbins against Michael Eddy] for a fraudulent misrepresentation in the sale of a farm, as to the quantity of land.

Mr. Randolph, for plaintiff.
Hunter & Robbins, for defendant.

STORY, Circuit Justice. This cause was argued at the close of the last November term of this court, and derives some of its interest and importance from the character of the parties, who are both clergymen, and the nature of the bill, which contains charges of fraud and misrepresentation. On the 21st of June, 1801, the parties entered into a written contract, whereby the defendant sold to the plaintiff a farm situate in Swansey, and agreed to execute a deed for the same in six weeks from that date. The plaintiff agreed to pay for the same at the rate of fifty dollars per acre. And the parties. "in consideration of the failure of the condition aforesaid," further bound themselves each to the other, "whichever may fail in the condition aforesaid," to pay the sum of fifty dollars. Both parties acted upon the supposition (in which they were doubtless mistaken in point of law), that the agreement was not binding upon them as an absolute sale, but that, at the option of either party, it might be rescinded upon the payment of the stipulated sum of fifty dollars. In consequence of this supposition, some correspondence took place between the parties towards the close of the stipulated period, as to the intention of the defendant to complete the conveyance, and on that occasion the defendant expressed his determination to fulfil his bargain. The ill health, however, of the defendant, of which due notice was given to the plaintiff, postponed the actual execution of any deed to the plaintiff until the 17th day of August of the same year, when one tract, constituting part of the farm, was conveyed, at the request of the plaintiff, to one Winslow, a subpurchaser under him, and the residue was conveyed to the plaintiff. The deed to Winslow described the tract by metes and bounds, and as "containing seven and a half acres, be the same more or less;" and the deed to the plaintiff also described the residue of the farm by metes and bounds, and as "containing forty acres, be the same more or less." No measurement of the farm, though intended by the parties at the time of the original contract, took place; but upon the final negotiation, at the time of giving the deed, the land was affirmed by the defendant to contain, according to his belief, fifty acres and upwards; and the plaintiff, giving entire credit to the suggestion, paid or secured the consideration of twenty-five hundred dollars for the same, and has since discharged the whole amount. In point of fact, the land, as the bill asserts, upon a recent survey, contains forty acres and one half acre, and no more; and this assertion is not contradicted by the answer. The bill seeks compensation, for the asserted deficiency, at the rate of fifty dollars per acre, upon the ground, that the representation, that the same contained fifty acres, was fraudulent and deceitfully made, by the defendant, at the time of the execution of the conveyance, and was implicitly confided in by the plaintiff. The bill also prays general relief. The answer, in the most explicit manner, negatives any fraud and misrepresentation; but it admits that the defendant did, at the time of the original contract, as well as of the conveyance, represent to the plaintiff, that the farm contained, in his belief, fifty acres and upwards; and it asserts, that such was in fact the defendant's belief from all the information he had from old measurements and other sources. It further alleges, that at the time of the final negotiation the original contract of sale, at a specific sum per acre, was rescinded, and that the bargain was completed for a gross sum of $2500; and that the plaintiff distinctly understood,

that the defendant would not then complete the sale, unless for the sum of $2500, whether there were fifty acres or not, and the deed was drawn accordingly.

The first question, arising in the case, is, whether the original contract has been rescinded, so that it is no longer to be considered as a purchase at a stipulated price per acre, but a purchase for a gross sum, whatever might be the measurement of the farm. Upon the terms of the original contract it is quite clear, that the price was to be regulated by the acre, and if that contract formed the sole basis of the conveyance, it might be difficult to resist the plaintiff's title to a decree. The general rule in equity is, that, under such circumstances, if there is any mistake in the quantity, the party is entitled to take the land and have compensation for the deficiency. The reason is, that each party is supposed to be regulated in his bargain by the real quantity, and if there be any mistake as to the real quantity, the one has more, and the other less, than what both intended, either in land or price. In such cases the quantity conveyed constitutes an essential ingredient in the bargain, and is not mere matter of description. Equity, therefore, will correct the mistake, and put the parties in the situation in which they would have been, if the real facts had been known to them. This is the clear result of the authorities. Thus in Shovel v. Bogan, 2 Eq. Cas. Abr. p. 683, pl. 4, where A agreed with B, for the purchase of lands at so much per acre, and an old survey was produced, and the purchase money paid according to it, and there was a deficiency in the number of acres, the lord chancellor decreed compensation for the deficiency. Whether, in that case, there was fraud, or mere mistake, is, perhaps, not quite certain from the language attributed to the lord chancellor; but he deemed the production of the old survey a direct affirmation of the quantity, and therefore gave relief. The doctrine was fully recognized in Hill v. Buckley, 17 Ves. 394, where the master of the rolls said, "Where a misrepresentation is made as to quantity, though innocently, I apprehend the right of the purchaser to be, to have what the vendor can give, with an abatement out of the purchase money for so much as the quantity falls short of the representation. That is the rule generally, as, though the land is neither bought nor sold professedly by the acre, the presumption is, that, in fixing the price, regard was had, on both sides, to the quantity, which both supposed the estate to consist of. The demand of the vendor, and the offer of the purchaser, are supposed to be influenced, in an equal degree, by the quantity which both believe to be the subject of their bargain. Therefore a ratable abatement of price will probably leave both parties in nearly the same relative situation, in which they would have stood, if the true quantity had been originally known." Here, the principle was not only admitted, as to purchases by the acre, but it was applied to cases of purchases for a gross sum, where there is a positive representation of quantity. I say positive, for a different rule is, or may be, applied, where there are qualifying words annexed, as we shall presently see. And even where there is a positive statement of the quantity of acres, much may depend upon the manner and connexion of the statement, and the nature of the contract or conveyance, whether it is to be deemed mere description, or of the essence of the purchase. For support of this observation it is only necessary to refer to Mann v. Pearson, 2 Johns. 37; Powell v. Clark, 5 Mass. 355; Dagne v. King, 1 Yeates, 322; Smith v. Evans, 6 Bin. 102; and Boar v. McCormick, 1 Serg. & R. 166. But where there are qualifying words in the contract, as to the number of acres, such as the words "more or less," or "said to contain," or "containing by estimation," in these and the like cases, there has not as yet been adopted any general rule allowing the parties a compensation, either for deficiency or overplus, if the mistake has been innocent on both sides. In an anonymous case in Freeman's Reports (Freem. Ch. 107), it is reported, that a case was cited, where a man conveyed his land by the quantity of 100 acres, be it more or less, and it was not above 60 acres, but had no relief, because it was his own laches. Mr. Sugden (Vend., 3d Ed., c. 6) thinks this case open to much observation, and supportable only upon the ground of an actual conveyance before relief sought. But it may be explained upon another ground, and that is, that the boundaries were actually described, or the tract well known to both parties, though its reported contents were different from the real quantity. In Twyford v. Wareup, Finch, 310, where the conveyance stated, that there were so many acres by estimation, and the preliminary articles declared, that the lands completely contained so many acres, as were mentioned in a particular, which stated them as so many acres by estimation, the court denied relief for the deficiency. So in Winch v. Winchester, 1 Ves. & B. 375, where the particular of an estate, sold by auction, described it as "containing, by estimation, forty-one acres, be the same more or less," but it in fact contained five acres less, the master of the rolls thought, that merely upon this particular the party could not be entitled to any abatement of the purchase money. On that occasion, he said, "the effect of the words 'more or less,' added to the statement of the quantity, has never yet been absolutely fixed by decisions, being considered sometimes as extending only to cover a small difference the one way or the other; sometimes, as leaving the quantity altogether uncertain, and throwing upon the purchaser the necessity of satisfying himself with regard to it."

It was in the former light, that the words were considered by my learned brother, Mr. Justice Washington, in Thomas v. Perry [Case No. 13,908], and probably also in Nelson v. Matthews, 2 Hen. & M. 164, as it certainly was in Quesnel v. Woodlief, Id. 173, note, by the court of appeals of Virginia. See, also, Jollife v. Hite, 1 Call, 301. In the latter case, there was the ingredient of the sale being at a specific sum per acre, and in the former case, though the sale was for a gross sum, yet the title deeds of the vendor himself showed, that there was an over estimate in his own deed by twenty acres. These facts may have had a material influence in producing the decree for compensation. On the other hand in Hull v. Cunningham's Ex'rs, 1 Munf. 330, where the sale was for a gross sum, of a tract "said to contain 370 acres, be it more or less," the court held, that the purchaser took upon himself the risk of the quantity, and was not entitled to any abatement of the purchase money for any deficiency. Twyford v. Wareup, Finch, 311, proceeded on the same ground. So did Winch v. Winchester, 1 Ves. & B. 375; Smith v. Evans, 6 Bin. 109; Boar v. McCormick, 1 Serg. & R. 166; and Glen v. Glen, 4 Serg. & R. 488. In short, the latest cases generally concur with the doctrine laid down in the anonymous case in Freem. Ch. 107. It seems to me, that there is much good sense in holding, that the words "more or less," or other equivalent words, used in contracts or conveyances of this sort, should be construed to qualify the representation of quantity in such a manner, that, if made in good faith, neither party should be entitled to any relief on account of a deficiency or surplus. Nor am I prepared to admit that the fact, that the sale is not in gross, but for a specific sum, by the acre, ought necessarily to create a difference in the application of the principle. I do not say, that cases may not occur of such an extreme deficiency as to call for relief; but they must be such as would naturally raise the presumption of fraud, imposition, or mistake in the very essence of the contract. Where the sale is fair, and the parties are equally innocent, and the quantity is sold by estimation, and not by measurement, there is little, if any hardship, and much convenience in holding to the rule, caveat emptor.

But to recur to the question, whether the original contract has been varied or rescinded. The defendant positively asserts the fact in his answer (and it opposes on this point the allegations of the bill), that at the time of the conveyance the sale was for the gross sum of 2500 dollars, whether the quantity was more or less than fifty acres. This state of things is perfectly compatible with the terms of the original contract. It was necessary, by these terms, that the number of acres should be ascertained by a measurement and survey before the conveyance could be completed. There was nothing unnatural in an agreement of the parties to waive the measurement, and to finish the contract upon an estimate of the quantity. Each of them well knew the land and its boundaries, and each had, or at least might have, equal means of ascertaining the probable quantity. It is true, that the plaintiff placed great reliance on the statements of the defendant, and had confidence in his sincerity and good faith. If the defendant's statements contained his real opinion in sincerity and good faith, the confidence of the other party, though now shown to be erroneously given, ought not to prejudice him. If the mistake was mutual and innocent, it ought not to be visited with the same consequences, as if it were fraudulent. Now, the terms of the conveyance are very strong to prove, that the defence, so far as the point of waiver of the terms of sale by the acre is concerned, is well founded. In the first place, the land specified in the deed to Winslow is described as "containing seven and a half acres, be the same more or less," and in the deed to the plaintiff as "containing "forty acres, be the same more or less," making in the whole forty-seven acres and one half, and no more. So that upon the face of the deed the estimation is less than fifty acres. This certainly cannot be accounted for except upon the supposition that neither party deemed the estimate of fifty acres previously made as binding, controlling, or absolute, but merely as a fair representation of belief or probability. In the next place, the words "more or less" restrain even this representation of the number of acres in the deed. They show, that neither party contemplated the number of acres as of the essence of the contract, but as matter of description, as what both believed, and neither warranted, to be the absolute contents of the farm. The whole weight of the evidence is to the same effect. It shows, that the defendant did not undertake to affirm positively in the course or conclusion of the negotiation, that there were fifty acres, or any other certain number, but that he would not sell short of estimating the farm at fifty acres, that is, for 2500 dollars. How can the sale of forty-seven and a half acres, "more or less," on the face of the deeds, be reconciled with an absolute sale at fifty dollars by the acre for fifty acres? We must, therefore, take the case to have been, that the parties concluded their bargain, and made the conveyance for the gross sum of 2500 dollars, though the farm might exceed or fall short of that quantity. Suppose the farm had measured forty-seven and a half acres, could there have been any pretence for compensation to the plaintiff in the face of his deeds? Suppose it had exceeded fifty acres, could he have been compelled to pay more purchase money? The answer to each question must be in the negative. Upon this point the case of Twyford v. Wareup, Finch, 310, is very significant. The court there said, "that the articles were only a security and preparatory to the conveyance,

and the defendant, having afterwards taken a conveyance, shall not resort to the articles or to any particular, or to any averment, or communication afterwards; for such things shall never be admitted against the deed." So in Smith v. Evans, 6 Bin. 102, Chief Justice Tilghman considered, that the original contract, which was for three tracts of land, containing 991¼ acres, at a specified price by the acre, was done away, or rather conclusively closed, as to quantity, by taking a deed by metes and boundaries of the tracts as "containing 991¼ acres, &c., by the same more or less." "By accepting this deed (said he) it appears to me, that the agreement, so far as concerned the quantity, was closed, both parties consenting to estimate it at 991¼ acres." And though the deficiency in that case was 88 acres, as there was no pretence of fraud, the court enforced payment of the securities for the whole purchase money. This case is far stronger than the present; but it has much in its principle, which commends it for adoption in practice. My judgment accordingly is, that the original contract of sale at fifty dollars by the acre was so far waived or modified by the parties, that the number of acres did not form the basis of the ultimate conveyance, but the farm was purchased upon an estimate assumed by the parties, and at a gross sum.

This leads me to the next, and, indeed, upon the structure of the bill itself, to the only important point of the controversy: and that is, whether there has been a fraudulent misrepresentation of the quantity by the defendant. The case has been argued also upon the ground of mere mistake; but the bill does not put the charge under this aspect, nor assume it as a ground of relief. The court, therefore, must deal with the case, as it is, secundum allegata et probata. The whole stress both of the allegations and proofs is, that the defendant represented his opinion and belief of the quantity in such a manner, as to gain the entire confidence of the plaintiff. There is no pretence, that the plaintiff made any positive assertion of fact, in the nature of a declaration of his knowledge, or of his warranty of quantity. The whole was confined to an expression of opinion and belief, and was so understood and acted upon by both parties. The contradiction, therefore, of the defendant's good faith is to be established, not by showing, that the quantity is different from the representation, but that the opinion and belief of the plaintiff were fraudulently misrepresented to the injury of the plaintiff. It has been suggested at the bar, that fraud cannot be predicated of belief, but only of facts. But this distinction is quite too subtle and refined. The affirmation of belief is an affirmation of a fact, that is, of the fact of belief; and if it is fraudulently made to mislead or cheat another, to abuse his confidence, or to blind his judgment, it is in law and morals just as reprehensible, as if any other fact were affirmed for the like purpose. The law looks, not to the nature of the fact averred, but to the object and design of the affirmation.

It is very material in this part of the cause, that the defendant's answer is so full, direct, and circumstantial in the denial of the fraud and misrepresentation. In a court of equity nothing short of clear and decisive testimony by two witnesses, or by other circumstances quite equivalent, ought to outweigh such an answer. In the complaint brought by the plaintiff before the church, of which the defendant is the pastor, there is an allegation of fraud; but if the testimony of the witnesses, as to the occurrences which took place before the proper authorities on that occasion, is to be credited, the plaintiff abandoned that charge, and denied his intention to make or persist in it. Such an admission would go very far to weaken the force of the charge.

The circumstances principally relied on to sustain the charge are, in the first place, the conduct of the defendant about the time of executing the conveyance. He made inquiries as to the state of the plaintiff's mind in relation to the purchase, and whether he was eager and earnest for the bargain. Having received information that the plaintiff was, in the language of a witness, "pretty fierce" to buy, the argument attributes to him the determination to make the most of his advantages. This may be a circumstance not wholly without weight; but it is surely too slight to rouse a suspicion of grave and intentional fraud. It may show wariness, and watchfulness, and worldly prudence in ascertaining how to negotiate with a willing purchaser; but it can scarcely pass for more than the indication of a wish to drive a close and thrifty bargain.

Another circumstance of more significance is the fact of the representation of the property in the probate inventory of the father's estate, presented and sworn to by the defendant, as executor under his will. The defendant took by a deed from his father one of the three tracts of land composing the farm, estimated at about twenty acres. The father, by his will, gave a parcel, estimated to contain about twenty-two acres, to one person, and another parcel, estimated to contain about one acre, to another person; and the residue of his real estate was devised to the defendant. In the inventory, the real estate of the father is represented to be "forty acres of land with one dwelling-house thereon." The argument drawn from these facts is, that, deducting the 23 acres given to other devisees, there could remain not exceeding 17 acres devised to the defendant; and therefore, uniting the tract, thus devised, with that which the defendant took by deed, there was within his own knowledge an estimated quantity, not exceeding thirty-seven acres. This argument is met on the other side by the allegation, that the inventory was by mere estimation,

and not by measurement; and that in cases of this sort it is not usual, especially where the estate is solvent, to be exact in the statement of the number of acres. The executor affirmed the inventory simply, because it was so returned by the appraisers. There is weight in this suggestion; and it derives some aid from the devise of the tract of twenty-two acres, which is described in the will, not by absolute quantity, but by metes and bounds, as containing "about 22 acres, be the same more or less." The circumstance, however, is not without importance; and it certainly called upon the defendant for much caution in his affirmations as to the quantity.

Another circumstance is, that upon a prior negotiation with certain persons of the name of Sherman for the purchase of the estate, the defendant represented the farm to contain forty-five acres. This fact comes out from both of the persons who negotiated for the purchase. But both agree that it was a mere estimation, and not a positive representation. A certificate of this fact was laid before the church meeting; and another witness asked the defendant at another time, why this representation was made. His answer was (as the witness states), "that it was in time of war, when it was not prudent for a man always to tell exactly what he was worth." I own that this excuse is very unsatisfactory. In the case of an intended sale it could form no ground for an undervaluation of the property, whatever might be the case for other purposes. The excuse, under any circumstances, if it involved a known misrepresentation, would not be very creditable; and it is less easily reconcilable with the high standard of moral purity, so appropriate in clergymen, than with that which is found in the common business of human life. The view, however, in which it bears on the present controversy, is not one of ethics, but of fact. Does it show, that the defendant himself misrepresented his own opinion and belief to the plaintiff, or, only, that he sometimes, when his own interest was concerned, used language without much care, and in a loose and inaccurate sense?

The other circumstances of the case have not presented any serious difficulty to my mind. This circumstance, I am compelled to admit, is calculated to make an unfavorable impression. It has a tendency to diminish, in some degree, that undoubting confidence, with which one would listen to the direct denials of the answer. But after pausing with much deliberation upon all the facts, I cannot say, that this circumstance ought to overcome them. The representation in the conveyances is of forty-seven acres and one half only; and here, giving this testimony its whole force, the prior representation reduces the quantity to forty-five. This difference is not such as would or ought, ordinarily, to introduce a presumption of ill faith. The estimates of men of quantities, in themselves uncertain, and unmeasured, may differ at different times from various circumstances, without any suspicion of wilful misrepresentation. What is matter of opinion, in such cases, carries with it the elements of doubt. Better information, more reflection, and more guarded attention may honestly change the belief of the party; and if his interest lies that way, it more readily draws his judgment to the most favourable conclusion. It would sound harsh, under such circumstances, to found a decree as upon fraud, where there might be innocent mistake, loose and inconsiderate assertion, or negligent inquiry. Especially would it be harsh to press such considerations against a solemn denial under oath, unless the judgment of the court could not justly avoid the conclusion. The case of fraudulent misrepresentation does not appear to me to be made out, so that a court of equity ought to interfere. My opinion is, that the bill ought to be dismissed; but it is not a case for costs for the defendant.

The district judge concurs in this opinion, and therefore let there be a decree of dismissal without costs. Decree accordingly.