## CHARLES D. WEART *vs.* SAMUEL K. ROSE.

1. Where it appears that the adjunct of quantity in a deed is used as *description* merely, and not as indicating the precise contents of the land conveyed, a mere deficiency in the quantity is not of itself evidence of a fraudulent intent.

2. Where it appears by definite boundaries, or by words of qualification, that the statement of the quantity of acres in a deed is mere matter of description, and not of the essence of the contract, the buyer takes the risk of the quantity, if there be no intermixture of fraud in the case.

3. Where land is sold by certain boundaries, or for so much for the entire parcel, any surplus over the quantity given belongs to the vendee, and the price cannot be increased or diminished on account of disagreement in measure or quantity.

4. If the sale is by the acre, and the statement of the number of acres is of the essence of the contract, the purchaser, in case of a deficiency, is entitled in equity to a corresponding deduction from the price.

5. Where the difference between the actual and estimated quantity of acres of land sold in the gross, is so great as to warrant the conclusion that the parties would not have contracted had the truth been known, in

such case the party injured is entitled to relief in equity on the ground of *gross mistake.*

6. Where the vendor agrees to convey a farm in gross, "containing about one hundred and fifteen acres of land," and the deed executed in pursuance of the agreement, describes the land by boundaries, and adds, "containing about one hundred and fifteen acres of land," a deficiency of 6.12 acres will not entitle the purchaser to an abatement of the purchase money.

The cause was heard upon the bill, answer, and proofs.

*E. W. Scudder,* for complainant.

*J. Wilson,* for defendant.

Cases cited by complainant's counsel. *Belknap* v. *Sealey,* 2 *Duer* 579; *Barnes* v. *Gregory,* 1 *Head* (*Tenn.*) 230; *Harrison* v. *Talbott,* 2 *Dana* 258; *Quesnel* v. *Woodlief,* 2 *Hen. & Mun.* 173, note; 4 *Kent's Com.* 467; *Lee* v. *Hester,* 20 *Georgia* 588; *Thomas* v. *Perry,* 1 *Peters' C. C. R.* 49; *Marvin* v. *Bennett,* 26 *Wend.* 169; *Stebbins* v. *Eddy,* 4 *Mason's C. C. R.* 414; 1 *Story's Eq. Jur.,* § 141, 144, *a; Dart on Vendors (Waterman's)* 307–8–9; *Dalton* v. *Rust,* 22 *Texas* 133; *Couse* v. *Boyles,* 3 *Green's Ch. R.* 212.

Cases cited by defendant's counsel. *Opdyke* v. *Stephens,* 4 *Dutcher* 90; *Rogers* v. *Colt,* 1 *Zab.* 704; *Speer* v. *Whitfield,* 2 *Stockt.* 107; 2 *Greenl. on Ev.,* § 601–2; 1 *Ibid.,* § 275–6–7; *Ibid.,* § 287–8; *Mann* v. *Pearson,* 2 *Johns. R.* 37; *Jackson* v. *Barringer,* 15 *Ibid.* 471; *Jackson* v. *Defendorf,* 1 *Caines' R.* 493; *Winch* v. *Winchester,* 1 *Vesey & B.* 375; *Morris Canal Co.* v. *Emmett,* 9 *Paige* 168; *Stebbins* v. *Eddy,* 4 *Mason's C. C. R.* 414; *Powell* v. *Clark,* 5 *Mass.* 355; *Dagne* v. *King,* 1 *Yeates* 322; *Smith* v. *Evans,* 6 *Binn.* 102–9; 1 *Story's Eq. Jur.,* § 146, note 2, § 149; *Deare* v. *Carr,* 2 *Green's Ch. R.* 513; *Penny* v. *Martin,* 4 *Johns. Ch. R.* 566.

THE CHANCELLOR. The defendant, by deed bearing date on the first of April, 1861, conveyed to the complainant, for

the consideration of $11,500, a farm in the township of Ewing, described in the deed as " containing about one hundred and fifteen acres of land." By subsequent measurement, it was ascertained that the farm in fact contained but one hundred and eight acres and eighty-eight hundredths, or about six acres less than it was described in the deed to contain. The complainant gave his bond and mortgage for $5500, a part of the purchase money. The bill alleges that the price agreed to be paid for the farm was $100 per acre, and asks that the complainant be permitted to redeem the mortgage by the payment of the balance justly due thereon, after deducting therefrom the price of the deficiency ascertained to exist in the quantity of acres as described in the deed. The relief is sought: 1. On the ground of fraud. 2. Of mutual mistake.

The contract for the purchase of the farm was originally made by Edward Nickleson, the father-in-law of the complainant, and at his instance the deed was made by the defendant to the complainant. The bill charges that the farm was represented by the defendant to Nickleson, at the time of making the contract, to contain one hundred and fifteen acres, and that at the time of making such representations, and at the time of the delivery of the deed, the defendant well knew that the representations were false and fraudulent, and that there was a considerable deficiency from that amount; and that the defendant also exhibited a map and plot of the farm, with the measurements and contents thereon stated, which he well knew were incorrect and calculated to deceive, and which were exhibited to the complainant and to Nickleson for that purpose. The answer admits that he exhibited the map and plot of the farm, as charged in the bill, and stated his belief that the number of acres were truly stated thereon, but fully and explicitly denies that the representation was fraudulent, or that it was false within the knowledge or belief of the defendant.

It appears, from the answer and from the evidence in the cause, that the land in question was part of a farm belong-

ing to Ebenezer P. Rose, and which was devised by him to his two sons, Jonathan F. Rose and Samuel K. Rose, the defendant. Prior to the year 1840, on the petition of Jonathan F. Rose for partition, the farm was divided between the two brothers, by commissioners appointed by the Orphans Court, and the tract conveyed to the complainant was assigned to the defendant, as his share under the will of his father. The commissioners caused a survey and map of the entire premises to be made, by which the share assigned to the defendant is described as containing one hundred and twenty-eight acres and three quarters. That map, in the familiar handwriting of Thomas Gordon, an experienced surveyor, was delivered to the defendant, on his coming of age, by his guardian, as the evidence of his title. It was exhibited by the defendant to Nickleson at the time of the contract, and delivered to the complainant with the deed for the premises. By deed dated on the seventeenth of June, 1852, the defendant conveyed to his brother, Jonathan F. Rose, a part of the tract assigned to him by the commissioners, which is described in the deed as containing twelve acres, more or less. Assuming the quantity of land thus conveyed to be truly stated at twelve acres, it left in the balance of the tract one hundred and sixteen acres and three quarters, or about one hundred and seventeen acres. The farm was thereafter assessed as containing one hundred and seventeen acres. The defendant, for years prior to the sale to the complainant, paid tax for that quantity of land. It does not appear that the defendant ever had the tract surveyed, or that he had any evidence of the quantity of land contained in the farm, other than that furnished by the map of the commissioners. He had no reason to suspect the accuracy of that survey, nor does it appear from the evidence that its accuracy ever was suspected, by himself or by any one else, until long after the conveyance to the complainant. It was subsequently ascertained that the deed to his brother, instead of twelve acres, contained about fourteen acres, which left the balance of the tract as described in the commissioners' map at one

hundred and fifteen acres, instead of one hundred and seventeen acres, as previously estimated. On the twelfth of December, 1860, five days before the sale to Nickleson, the defendant offered the farm for sale by the acre, and described it in the conditions of sale, as containing about one hundred and fifteen acres. At the time of the contract, the map was exhibited by the vendor as evidence of the quantity contained in the tract originally allotted to him by the commissioners. The parties went to a surveyor to ascertain how much was included in the tract conveyed by the defendant to Jonathan F. Rose, but no inquiry was made as to the area of the entire tract. Both parties appear to have relied upon the accuracy of the map and survey made by the commissioners, and it was natural that they should have done so. By actual measurement, it appears that the contents of the farm as designated on the map are erroneous, and that its real contents, instead of one hundred and twenty-eight acres and three quarters, are about six acres less.

The first circumstance relied on as evidence of a fraudulent intent on the part of the defendant is, that in the year 1857, he advertised the farm for sale, as containing about one hundred and twenty acres. The farm was then supposed to contain about one hundred and seventeen acres. If this circumstance could have any significancy as indicating an intention to defraud, it surely could indicate no intention to defraud this complainant. It appears, however, that in 1851 he mortgaged the farm to his mother, describing it as containing about one hundred and twenty acres. It was then supposed to contain one hundred and twenty-eight acres and three quarters. In 1855, after the conveyance to his brother, Forman, he mortgaged the residue of the tract to him, describing it as containing about one hundred and twenty acres. It was then supposed to contain one hundred and seventeen acres. In 1855, he advertised it for sale, as containing about one hundred and twenty acres. These circumstances show that the adjunct of quantity was used as descriptive merely, not as indicating the precise contents of the farm. It affords no

evidence of a fraudulent intent, either as to the defendant or as to any other party.

The only material testimony touching the charge of fraud is that of Dr. John W. Scudder. He testifies that before the sale the defendant called on him, in company with his brother, Forman. At their request he made a rough estimate of the quantity of land contained in the lot sold by the defendant to his brother. He told them it would be more advantageous to sell by the lump, than by the acre. He adds: " I have often heard it said there were one hundred and twelve acres in the farm of defendant. I supposed the contents of the farm would be less than one hundred and twelve acres." And in answer to the question, whether he stated to defendant that his farm would not hold out one hundred and twelve acres, he answers: " I am not positive, but I think I did tell him that it would hardly hold out, if his *survey was correct.*" If this evidence is taken as literally true; if, in fact, the witness apprised the defendant prior to the contract of sale that his farm would not hold out one hundred and twelve acres, it is strong evidence in support of the charge of fraud. The witness is a gentleman of respectability, whose veracity is unquestioned. But upon the face of his testimony, there is reason to apprehend that he has fallen into a serious mistake as to the number of acres which the farm was supposed to contain. The witness states that he was called upon to calculate the quantity of land in the lot sold by the defendant to his brother, Forman. He did calculate it, and either he, or the defendant, or his brother, deducted it from the whole contents of the farm marked on the map. The map exhibited was the commissioners' map, on which the whole contents were marked as one hundred and twenty-eight acres and three quarters. The witness does not allege that he calculated the contents of the entire farm, or that he had any knowledge or suspicion of the error which exists on the commissioners' map. His conclusion was arrived at simply by deducting the number of acres in the lot conveyed by the defendant to his brother, from the quantity stated on the

commissioners' map to be in the whole tract allotted to the defendant. That never could have shown a result less than one hundred and twelve acres. It would have shown a result less than one hundred and seventeen acres, which the tract had been supposed to contain, and it might, according to the testimony of one of the witnesses, have shown a result of a fraction of an acre less than one hundred and fifteen acres, but it never could have shown the result which Dr. Scudder supposes it did. The probability of this mistake is greatly strengthened by the statement of the witness, that he had often heard it said that the defendant's farm contained one hundred and twelve acres. Now there is not the slightest evidence in the cause, that the farm was ever supposed to contain but one hundred and twelve acres. No other witness in the cause has ever heard of it. By the commissioners' map, the farm was said to contain one hundred and twenty-eight acres and three quarters, and deducting the land estimated to have been conveyed to Forman, there remained one hundred and seventeen acres. The farm was assessed at one hundred and seventeen acres. Taxes for years were paid for that amount, and no other witness pretends that he ever heard it contained less. The farm of Forman Rose did contain about one hundred and twelve acres. That farm the witness had partially run out, and it is not improbable that the two were confounded in his mind. Aside, therefore, from any evidence on the part of the defendant, it would be unsafe to regard the charge of fraud as sustained by this testimony.

The answer of the defendant, and the evidence in support of it, removes all doubt upon this point. The defendant, by his answer, refers to this very interview with Dr. Scudder, as evidence in his behalf. He would scarcely have referred to it if he had known, as he must have done, if the recollection of the witness of the quantity of acres supposed to be in the farm is correct—that it furnished evidence of his fraudulent conduct. Forman Rose, moreover, who was present at the conversation, testifies that nothing whatever was

said by Dr. Scudder in regard to the farm containing less than one hundred and twelve acres. What the doctor did say was, that the farm would not hold out one hundred and seventeen acres, as had been supposed. This, I think, is the clear result of the evidence.

The second ground of relief is, that the evidence shows a case of mutual mistake, and that in equity the complainant is entitled to a deduction from the price corresponding to the deficiency in the quantity of acres specified in the deed.

The general rule, as laid down by Chancellor Kent, is, that where it appears by definite boundaries, or by words of qualification, as " more or less," or as " containing by estimation," or the like, that the statement of the quantity of acres in the deed is mere matter of description, and not of the essence of the contract, the buyer takes the risk of the quantity, if there be no intermixture of fraud in the case. 4 *Kent's Com.* 467 ; *Mann* v. *Pearson,* 2 *Johns. R.* 37 ; *Marvin* v. *Bennett,* 26 *Wend.* 169 ; *Stebbins* v. *Eddy,* 4 *Mason C. C. R.* 414 ; *Powell* v. *Clark,* 5 *Mass. R.* 355 ; 1 *Story's Eq. Jur.,* § 144, *a ;* 2 *Washburn on Real Prop.* 630.

So where the land is sold by certain boundaries, or for so much for the entire parcel, any surplus of land over the quantity given belongs to the vendee, and the price cannot be increased or diminished on account of disagreement in measure or quantity. *Morris Canal Co.* v. *Emmett,* 9 *Paige* 168 ; *Innis* v. *McCrummin,* 12 *Martin's R.* 425 ; *Gormley* v. *Oakey,* 7 *Louis. R.* 452. The principle is embodied in the Louisiana Code, Art. 2471.

But where the sale is by the acre, and the statement of the quantity of acres is of the essence of the contract, the purchaser, in case of a deficiency, is entitled in equity to a corresponding deduction from the price. 1 *Sugden on Vendors* 369 ; *Barnes* v. *Gregory,* 1 *Head's R.* 230.

There is a further qualification of the general rule, *viz.* where the difference between the actual and the estimated quantity of acres of land sold in the gross, is so great as to warrant the conclusion that the parties would not have con-

tracted had the truth been known, in such case the party injured is entitled to relief in equity on the ground of gross mistake. 1 *Story's Eq.*, § 141; *Belknap* v. *Sealey*, 2 *Duer* 570; *Quesnel* v. *Woodlief*, 2 *Hen. & Mun.* 173, *note; Nelson* v. *Matthews, Ibid.* 164; *Harrison* v. *Talbott*, 2 *Dana* 258; *Couse* v. *Boyles*, 3 *Green's Ch. R.* 212.

The land conveyed to the complainant is described by metes and bounds. The complainant has the distinct thing for which he contracted. The complaint is, that there was an over estimate of the quantity of acres contained in the tract. It is described as containing about one hundred and fifteen acres. Its actual contents are one hundred and eight acres and eighty-eight hundredths, showing a deficiency of a fraction over six acres. The deficiency is not sufficient to warrant the interference of the court on the ground of gross mistake. No case has gone so far. There is no ground for assuming that the purchase would not have been made at the price stipulated, had the true quantity of land been known. Mr. Nickleson has not so stated. Nor has the vendor ever offered to sell his farm below the price stipulated. He has repeatedly been offered more. There was no absolute representation of the quantity of acres contained in the tract by the vendor as within his knowledge. It is expressly denied by the answer. The whole evidence of both parties shows that the representation of quantity was but an expression of belief, founded on the statement contained in the commissioners' map. The fact that the parties went together to a surveyor for a computation of the quantity sold off the farm, shows that the reliance was upon the map, rather than upon any representation of the vendor. The case rests on the ground that the sale was made, not in gross, but by the acre. Assuming that the testimony of Mr. Nickleson, upon this point, is strictly true, and that so far as it conflicts with the testimony of the defendant, it is entitled to full credit, it fails to establish the fact that the sale was made by the acre. The utmost that it can be deemed to establish is, that the negotiations for the sale were conducted upon that basis. The con-

tract itself is in writing. It bears date on the seventeenth of December, 1860, more than three months before the deed was delivered. By it Rose agrees to sell, and Nickleson to buy, all that certain farm and tract of land owned and occupied by Rose, in the township of Ewing, containing about one hundred and fifteen acres, for the sum of eleven thousand five hundred dollars. There is no mistaking the import of the contract. Its terms are clear and precise. It is drawn by experienced counsel. It doubtless embodies, as it was designed to do, and as the law conclusively presumes it does, the meaning of the parties. Whatever the previous negotiations may have been, the contract eventually made was a contract for the sale of a specific tract, not by the acre but in gross, at a stipulated price for the whole farm owned and occupied by the vendor. The case is strongly analogous to that of *Stebbins* v. *Eddy*, 4 *Mason* 414, and in principle is virtually controlled and decided by it.

The bill must be dismissed.