## CRAM *vs.* THE UNION BANK OF ROCHESTER.

M. & R., being copartners in business, R., by an agreement in writing, sold and conveyed to W. all his interest in " the property and effects " of the firm, being one half; " that is to say, the undivided one half of all and singular the said goods, working tools, notes and bills receivable, and *all other valuable thing or things* belonging to said firm, *of every name and kind;*" subject, however, to the payment by W. of one half of all the debts and liabilities of the firm, due and to become due; which he agreed to pay. It was contemplated, at the time, that W. should take the place of M. in the firm, which he subsequently did. *Held,* that under the general terms of this agreement, R.'s interest in a sum of money, deposited in the bank to the credit of the firm of R. & M., passed to W., although the existence of such deposit was unknown to the parties at the time of the sale.

And this, although an inventory of the property was taken, which the parties supposed embraced every article belonging to the firm; the contract not being, in terms, limited by the inventory, which was not mentioned or referred to in the bill of sale; the parties having employed words of description so general and comprehensive as to include every species and article of property of the firm, whether enumerated in the inventory or not.

THIS action was brought to recover the balance of a deposit in the Union Bank of Rochester. Prior to the month of September, 1859, the firm of Roach & Mattison carried on the tin, copper and sheet iron business at the city of Rochester. On the 6th day of September, 1859, Mattison sold out all his interest in the copartnership property to Calvin Whaples, by an instrument under the hands and seals of himself and Whaples, in these words: "This instrument, made this 6th day of September, 1859, between Germain Mattison, of the city of Rochester, of the first part, and Calvin Whaples, of the same place, of the second part, witnesseth as follows. Whereas, the party of the first part and one William E. Roach have, during fifteen months last past and upwards, carried on the tin, copper and sheet iron business, in the city of Rochester, in partnership, under the firm and style of Roach & Mattison, and have on hand, belonging to said firm, a stock of goods, consisting of tin, copper and sheet iron, manufactured and unmanufactured, and other goods and working tools in the way of said business, and

also notes and bills receivable, book accounts, and claims against different persons to a considerable amount ; and the said firm being also indebted to different persons, in sundry sums, for goods purchased from time to time, by said firm, in the prosecution of said business and otherwise. Now the said party of the first part, in consideration of $900, to him in hand paid by the party of the second part, has sold and conveyed, and does hereby sell and convey to the party of the second part, all his interest in said property and effects, that is to say, the undivided one °half of all and singular the said goods, working tools, notes and bills receivable, and all other property and valuable thing or things, belonging to said firm, of every name and kind; subject however to the payment by the party of the second part, of one half of all the debts and liabilities of said firm, due and to become due, and existing and unpaid at the date hereof. And the party of the second part hereby agrees to pay the one half of all said debts and liabilities, and to indemnify and save harmless the party of the first part therefrom. In witness," &c.

Whaples immediately entered into copartnership with Roach, taking the place of Mattison in the firm. Whaples & Roach continued the busines until January, 1860, when they failed, and made a general assignment of all the copartnership property to the plaintiff. At the time of the sale to Whaples, Roach & Mattison had an account with the Union Bank, and there was a balance in their favor of $165. None of the parties were aware of this balance until the spring of 1862, when the plaintiff ascertained the fact and demanded payment. The bank refused to pay, claiming that it did not belong to the plaintiff by virtue of the assignment made by the firm of Roach & Whaples to him. On the trial it was shown that an inventory was made at the time of the sale to Whaples. The defendant offered to prove the contents of the inventory by parol. The court excluded the testimony. The defendant then offered to prove by parol, that the sale was made with reference to the inventory, and that the

inventory was supposed to contain all the property sold. This proof was also rejected. The defendant then offered to show, by parol, that Mattison did not intend by the sale to Whaples, to transfer the money in the Union Bank. This testimony was excluded also.

. The evidence being closed, the defendant moved for a nonsuit, on the following grounds: 1. That the money in bank did not pass to Whaples or to the plaintiff; 2. That it was not intended to pass, and therefore did not; 3. That the plaintiff had failed to establish any right or title thereto. The motion was denied.

The counsel for the defendant then requested the court to submit each of the following questions to the jury: 1. Whether it was the intention of Mattison & Whaples, in the sale by the former to the latter, to transfer the money in bank to Whaples; and 2. Whether the making of the sale between those persons in such form as to include the bank deposit (assuming that it did so) and omitting to except the money in bank from the operation of the bill of sale, was not by the mutual mistake of those parties, arising from their ignorance of the existence of such fund or credit, and other circumstances. The court declined to submit either of these questions to the jury, and the defendant excepted.

Whereupon the jury were directed by the court to find a verdict for the plaintiff, and they found a verdict accordingly for $182.92. Exceptions ordered to be heard in the first instance at the general term.

*J. C. Cochrane*, for the plaintiff. I. The written instrument executed by Mattison & Whaples is clear, plain and unambiguous. By it all the copartnership property was sold, and was designed to be sold, to Whaples. And although the parties did not know, at the time, of a particular item of property, it would pass by the assignment. (*Couch* v. *Delaplaine*, 2 *Comst.* 397.) The evidence offered by the defend-

ant tended directly to contradict the language and legal effect of the writing.

II. Conceding this, the defendant claims that the evidence was admissible for the purpose of showing a mistake. Mistakes are of four classes: (1.) A mistake in the form of a contract, by reason of which the real agreement between the parties is not expressed. (2.) A mistake in regard to the effect of the contract. (3.) A mistake in regard to the consideration of the contract, or the facts upon which it is based; the parties acting upon an assumed state of facts which did not exist. (4.) A mistake in regard to the subject of the contract, or the matters upon which it operates. There can be no pretense here that there was any mistake of the first class. The written contract expresses exactly what the parties agreed upon. Mattison intended that Whaples should take his place in the firm, with all his rights and liabilities. It was not understood that any thing should be reserved. If there was a mistake of the second class, that was a mistake of law. If there was mistake in regard to the matters embraced in the other classes, no one but a party or privy to the contract can ask relief; and that must be done in the proper action. The most that can be claimed is, that if the fact had been known, peradventure, the contract might not have been made. But, notwithstanding the mistake, the party may prefer to allow the contract to stand. A mistake is in the nature of a fraud, which the party may take advantage of or not, at his option. In this case the parties are content that the contract should remain. Strangers to the contract claim that the parties labored under a mistake in making it. If strangers, even in a common law action, can upset a contract which the parties have taken no steps to disturb, no man can tell whether he has an existing contract or not; and the question in all cases will be, not what the contract was, but what, in the opinion of others, it ought to have been.

III. There was no mistake, here, for which any party could

claim relief. The subject of the contract was the one half of a copartnership business, the purchaser taking one half of all the stock and property, and assuming one half of all the liabilities. The interest sold was estimated at $1600, and may have embraced property to the amount of $20,000. The firm then had an account with the Union Bank, but neither of the parties took the trouble to ascertain how it stood. There was in fact, a balance owing the firm of $165; one half of which passed by the assignment. This, we submit, was no mistake. It was one of the risks always contemplated in contracts of this description, and necessarily incident to the contract. The party bought all debts and assumed all liabilities. If some particular debt happened to be less, and another more, than the parties supposed, it would not, in the absence of fraud, affect the agreement. (*Story's Eq. Jur.* § 138 *h.*) In order to entitle a party to relief, the mistake must be of a material and fundamental character, and not a mere mistake in regard to some detail which would not have prevented the contract if known. (*Id.* §§ 138 *i*, 141.) And the fact must have been such that it would not have been ascertained with reasonable diligence. In this case it was only necessary to look at the bank book in the party's own possession. (*Id.* §§ 146, 150, 151.)

IV. This is not a case where any party can treat the contract as a nullity. If one party claims relief, he must act promptly, and the other party must be put in *statu quo.* It would be an alarming doctrine if a party, after making a written bill of sale, on a good consideration, of all his property of a certain description, could carry off all such as he did not recollect, or claimed that he did not recollect, at the time. Thus the title would in all cases depend, not upon the plain terms of the written agreement, but upon recollection. Here, Whaples bought half of all the copartnership property, or nothing. He has a right to that, or a right to be released from the whole contract. He has a right to show that the liabilities assumed by him were much more than

was supposed at the time.   If one party has the right to take property not recollected, the other party must have the right to be released from the payment of debts not recollected.   If the contract is to be changed at all, the whole case, and all the parties, must be before the court.   Otherwise the parties cannot be put back into their former position.   (*Story's Eq. Jur.* § 138 *i.   Id.* § 165.)

V.   This is a collateral action at law.   Neither of the parties to the contract is a party to it.   No mistake is set up in the pleadings, or relief demanded.   The contract is evidence of the title of the plaintiff, but the consideration, or the motives of the parties to it, as well as the question whether they acted ignorantly or mistakenly in making the contract, is entirely immaterial in this action.

VI.   Parol evidence of the contents of the inventory, and of the intent of Mattison, was properly excluded, and there was no question to submit to the jury.

*Strong & Mumford,* for the defendant.   I.   It is clearly established by the evidence, that neither Mattison nor Whaples, at the time of the making of the sale by the former to the latter, of the undivided half of the effects of the firm of Roach & Mattison, had any knowledge of the balance, or that there was any balance, to the credit of that firm, in the Union Bank; and hence that this balance was not in the contemplation of the parties at that time, but the sale was made without any reference to it.   It is also proved that the parties to the sale, in making it, understood that the effects of the firm of Roach & Mattison consisted only of the property in and about the shop where they carried on business, which was within the view of the parties, and the indebtedness to the firm as shown by their books, which were open to the inspection of the purchaser, and were examined by him.   The entire subject of the sale, intended by the parties to be embraced in it, was therefore well known and understood by them.

II.   Assuming that the terms of the bill of sale are broad

enough to include the balance in question, in the bank, the instrument having been made thus broad under a mistake, or ignorance of the existence of any such balance, the court will restrain the operation of the instrument to the effects intended to be transferred. The general rule is that an act done, or contract made, under a mistake, or ignorance of a material fact, is voidable and relievable, in equity. (*Story's Eq. Jur.* § 140.) This rule applies to cases of innocent ignorance and mistake on both sides, or forgetfulness of facts, as well as to those where fraud is practiced upon the party seeking relief. (*Id.* §§ 140 *to* 142.) The same principle will apply to cases of purchases, when the parties have been innocently misled, under a mutual mistake as to the extent of the thing sold. (*Id.* § 144.) It is upon the same ground that a court of equity proceeds, when an instrument is so general in terms as to release the rights of the party to property to which he was wholly ignorant he had any title, and which was not within the contemplation of the bargain at the time it was made. (*Id.* § 145. *Calverley* v. *Williams,* 1 *Ves. Jun.* 210. *Johnson* v. *Taber,* 10 *N. Y. Rep.* 319. *Wheadon* v. *Olds,* 20 *Wend.* 174. *Kelly* v. *Solari,* 9 *Mees. & W.* 54. 12 *Sim.* 465. *S. C.* 35 *Eng. C. L. Rep.* 393. 2 *Smith Lead. Cas.* 243.)

III. The plaintiff seeking to establish a title to the balance in question through the bill of sale of Mattison to Whaples, it was competent for the defendant, on the bill of sale being put in evidence, to meet and avoid its force by evidence of the mistake. The bill of sale was given in evidence to prove the general allegation in the complaint of the transfer of the balance to the plaintiff, and might be answered by proof of the mistake, in like manner as in an action of ejectment, a deed, given in evidence to prove title in the plaintiff, may be met by evidence of a mistake. (*Thurman* v. *Anderson,* 30 *Barb.* 621, 622. *Dobson* v. *Pearce,* 2 *Kern.* 156. *Bartlett* v. *Judd,* 21 *N. Y. Rep.* 200, 202. *Haire* v. *Baker,* 1 *Seld.* 357, 362.)

IV. The motion for a nonsuit should have been granted. If not, the court should have submitted to the jury the questions they were asked to submit. And the direction to the jury to find for the plaintiff was erroneous.

V. The court erred in the several rulings upon questions of evidence, to which exceptions were taken by the defendant.

*By the Court,* James C. Smith, J. I think this case was properly disposed of at the circuit. It appears by the plain and unambiguous terms of the bill of sale executed by Mattison to Whaples, that the subject matter of the sale was the interest of Mattison in the property of the firm. The sale was not of specific articles by items, but of the entire interest of one of the partners in the partnership effects, in gross. Undoubtedly, the parties, in making their contract, took into consideration the apparent amount of goods and tools on hand, and of the indebtedness to the firm as shown by their books; and it may be assumed that an inventory was taken, as the defendants offered to show, on the trial, to which the parties referred in estimating the amount and value of the property. Even if it be further assumed that the parties supposed the inventory embraced every article belonging to the firm, still the contract was not in terms limited by the inventory; the latter is not mentioned or referred to in the bill of sale, and the parties purposely and expressly employed words of description so general and comprehensive as to include every species and article of property of the firm, whether enumerated in the inventory or not. It was contemplated, at the time, that Whaples should take the place of Mattison, in the firm, which he did; and it was agreed that he should pay Mattison, for his interest, the sum of $900, and should also assume his half of the debts owing by the firm. In short, as Mattison testified, Whaples took his place in the firm, "one half interest, and one half liability." An inventory of the debts was also made, but it was not referred to in the bill of sale, and the effect of Mattison's agreement was to

make him liable for one half of all the debts, whether inventoried or not.   In these circumstances I do not think it competent for Mattison or the defendants, claiming under him, to set up as a defense to this action that a particular item of the partnership property, to wit, the claim in question against the defendant, did not pass by the bill of sale, for the reason that its existence was unknown to the parties, at the time of the sale.   In view of the fact that the parties intended that the purchaser should take the place of the vendor, in the firm, and of the broad language which they employed, in describing not only the property conveyed, but also the liabilities assumed, I think they must be deemed to have had in their minds the possibility, not to say the probability, that one or more items of property as well as of indebtedness may have been unknown or forgotten at the time, and to have provided by their contract for the very contingency which has arisen.   If this view of the contract is correct, it follows that the claim in question passed to Whaples, as completely and effectually as did any of the property of the firm.

The transaction is analogous to a purchase of a farm by certain boundaries, containing in gross, by estimation, a certain number of acres.   It is well understood that in such a case, if the transaction be *bona fide,* and both parties be equally under a mistake as to the quantity, but not as to the boundaries, the sale will be binding on both parties, whether the farm contains more or fewer acres.   (*Story's Eq. Jur.* § 144 *a.   Morris Canal Co.* v. *Emmett,* 9 *Paige,* 168.   *Stebbins* v. *Eddy,* 4 *Mason,* 414.)

There are other considerations, which ought not to be overlooked.   The defense interposed is of equitable cognizance.   When a court of equity is asked to give relief in a case not fully remediable at law, or not remediable at all, at law, it grants it only according to its own doctrines, and upon equitable principles.   By the terms of the agreement, as has been already observed, Whaples assumed Mattison's lia-

bility in respect to all the partnership debts. There can be no doubt that by his contract he became liable to each creditor of the firm, whether the particular debt of such creditor was known or not by the parties to the contract. His liability being thus broad, it would be inequitable to limit his purchase, as proposed by the defendants.

Again: all that Whaples could in any event acquire by his purchase was what might remain of Mattison's interest after payment of the partnership debts. The amount and value of the remainder were, in the nature of the case, doubtful; and, in such cases, the equity is deemed equal between the parties; and when it is so, a court of equity is generally passive, and rarely exerts an active jurisdiction. This rule applies to all cases of sale of real estate or personal estate, made in good faith, where material circumstances, affecting the value, are equally unknown to both parties. (*Story's Eq. Jur.* § 150.)

I am of opinion that the plaintiff is entitled to judgment on the verdict.

Ordered accordingly.

[MONROE GENERAL TERM, December 7, 1863. *Johnson, J. C. Smith* and *Welles,* Justices.]