## CHAUNCEY BACON, RESPONDENT, v. HENRY T. FRISBIE AND BARNEY RATNOUR, APPELLANTS.

*Opinion of value — when falsity of, constitutes a fraud — Attorney and client — what communication between, privileged.*

While opinions of value, even though false, are not ordinarily evidence of fraud, yet, when the vendor knowingly makes false representations as to the market value of land, knowing the vendee has not seen it, and induces him not to examine it for himself, but to rely upon such representations, he is guilty of fraud, and liable for the damages occasioned thereby.

Every communication made to an attorney or counsellor by a client, for the purpose of getting advice as to the law applicable to the facts so stated, is privileged.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon a case and exceptions.

This action was brought on the 10th day of May, 1876, to recover damages alleged to have been sustained by the plaintiff by reason of fraud practiced by the defendants, in making false and fraudulent representations in regard to a farm belonging to the defendant Frisbie, and in regard to the terms and amount of a mortgage held by David W. Ingalls on said farm, and in regard to the financial condition of said Ingalls, and in regard to what defendant Ratnour would do concerning a second mortgage on said farm, taken by plaintiff of defendant Frisbie as security for payment of part of the purchase-price of plaintiff's hotel and vacant village lot in Oneida, which plaintiff sold to defendant Frisbie on the 28th of April, 1875.

*Edwin J. Brown,* for the appellants.

*James B. Jenkins,* for the respondent.

LEARNED, P. J.:

Kennedy was an attorney-at-law, and before and since the time of the conversation he had done business for Ratnour profession-ally. He also kept a liquor store, and the conversation was in that store. He had no general retainer from Ratnour, and he never was engaged by him in regard to this suit. He testifies that he did not consider that Ratnour was advising with him as counsel, for the reason that Ratnour did not inform him what the transaction was, until just as he was going out of the door.

The conversation to which Kennedy was allowed to testify, against defendant's objection, was as follows: Ratnour said to him, supposing two men were trading land, and there was a fraud in the transaction, and a third party was interested, would he be liable? Kennedy said he would. Kennedy asked what the fraud was. Ratnour said: Suppose a man should induce another to take a mortgage on a farm, and should tell him there was a $5,000 mortgage on it ahead of his, and it should turn out to be a $6,000 mortgage, would he be liable? Then he wanted to know if a third party made the representations, would the third party be liable. Kennedy told him he would. After a little more talk, Kennedy said: "Was it this Bacon trade over here?" And Ratnour said: "I guess it is." Kennedy said: "Where is the farm?" and Ratnour said: "You know where it is." Kennedy replied that he remembered now, because he (Ratnour) wanted him to take an inventory of the hotel property.

Now, this evidence was given by the plaintiff, in order to show that Ratnour was a party to the fraud. Ratnour's question was not merely hypothetical. Otherwise the evidence would have been immaterial. The very force of the evidence consisted in the fact that Kennedy asked if the case, which was at first stated hypothetically, was not, in fact, the bargain which is now in ques-tion, and that Ratnour acknowledged that it was. Ratnour did not say explicitly that he was the third party, but that was what was meant by the evidence.

It is plain, then, that Ratnour wished to obtain legal advice; that

is, advice on a question of law. To obtain this, he stated to a lawyer the facts of this present case, as they are claimed to be by the plaintiff; that is, in substance, that there had been fraud in a trade of land, and that a third party made the fraudulent representation. He was himself the third party. And the statement which he thus made to a lawyer, in order to obtain advice, the lawyer is allowed to testify to in court against Ratnour.

I think this was wrong. All communications made by a client to his counsel, for the purpose of professional advice or assistance, are privileged, whether such advice relates to a suit * * * or to any other matter proper for such advice or aid." (*Britton* v. *Lorenz*, 45 N. Y., at p. 57.) It is unnecessary to cite other authorities. That case extends the rule farther than it was stated in the opinion in *Whiting* v. *Barney* (30 N. Y., 330).

Ratnour's statement was for the purpose of professional advice. He wished to know whether a third party would be legally liable for the fraud in the Bacon sale. And he was, as the plaintiff claims, the third party. His communication, then, was privileged. And this was his privilege, not his attorney's. Ratnour could not be deprived of it by Kennedy's saying he did not consider his advice as counsel. It was, in fact, legal advice, whatever Kennedy considered it.

The object of the rule is evidently to enable persons to obtain legal advice on a free and full statement of facts, without the risk that the statement will be made evidence against them. And to effect that object, it is necessary that every statement should be privileged which is made to an attorney or counsellor for the purpose, on the part of the client, of getting advice as to the law on the facts stated. The motive of the party who makes the statement, and the character of the party who hears it, make it privileged.

For these reasons, I cannot agree with the opinion of Judge BOARDMAN on this point, and think the judgment and order should be reversed as to Ratnour, and a new trial granted, costs to abide event.

BOARDMAN, J.:

Upon the evidence contained in the case, we do not think the judgment should be disturbed. There is much of conflict, but

no such preponderance in the evidence in favor of the defendant as to justify our interference. The fact is patent that the plaintiff has suffered serious loss by reason of the arrangement and sale made by him. It is equally certain that he had little or no knowledge of the Frisbie farm, except what he derived from the defendants; that he relied upon the information derived from them; that he would not have made the arrangement if he had not believed the mortgage taken by him was good and well secured. These facts being apparent, the character of the representations made by the defendants was submitted to the jury, and it has found such representations false and fraudulent on the part of each defendant. That decision, upon the facts, must be conclusive, unless there were errors committed upon the trial compelling us to grant a new trial.

Very many exceptions have been urged upon us. We will consider such of them as seem to be of importance.

The plaintiff was permitted to prove the value per acre of Frisbie's farm. Evidence was given tending to show that Frisbie said he had been offered $13,500 for his farm of 151 acres, and that the land was worth $80 to $100 per acre. At the time of this transaction, there was a mortgage of about $6,000 upon such farm. As a result of the negotiations, the plaintiff took a further mortgage of $5,000 upon the same premises. While opinions of value are not ordinarily, though false, recognized as evidence of fraud, it is not always so. We think the learned justice, in his memorandum denying a new trial in this case, expressed the true rule, as laid down by late authorities. He says: " If the defendants knowingly made false representations as to the market value of the farm, knowing the plaintiff had not seen it, and induced him not to examine it for himself, and to rely upon their representations, it would be fraud." This is quite as strongly put as in *Simar* v. *Canaday* (53 N. Y., 298, 306). At the page last cited, the learned judge says statements of value of property " may be, under certain circumstances, affirmations of fact. When known to the utterer to be untrue, if made with the intention of misleading the vendee, if he does rely upon them and is misled to his injury, they avoid the contract," citing *Stebbins* v. *Eddy* (4 Mason, 414, 423). The case of *Simar* v. *Canaday* would seem

to be analogous, in most respects, to the one under consideration. The precise representations made and proof offered by way of showing them to be false are not given in the report.

An equally strong case to the same effect is that of *McClellan* v. *Scott* (24 Wisc., 81). The court there held that, when property was stated to be worth three times its actual value, it must be treated not as a mere matter of opinion, but as a fraudulent misrepresentation. (*Medbury* v. *Watson*, 6 Metc., 246.)

Judge FOLGER, in *Simar* v. *Canaday* (*ante*), further says.: "Whether a representation of value is merely an expression of opinion or belief, or an affirmation of a fact to be relied upon, is a question for the jury." It was so treated by the court in this case, and was fairly submitted to the jury. Hence, there was no error in the submission of this matter to the jury, nor in the manner it was done.

For the reason already given, the various motions for a nonsuit, as to one or both defendants, were properly denied.

It is claimed the charge to the jury was erroneous in several particulars. It is a sufficient answer that no exceptions were taken.

It is proved, under the defendants' exception, that defendant Ratnour, during the negotiations, said to plaintiff: "I will loan you $1,000 on the mortgage (the $5,000 to be taken by plaintiff of Frisbie), and I don't want you to sell it, for I want to buy it." This was admissible, as part of the *res gestæ*, and for the further purpose hereafter stated. In like manner it was proved that Ratnour afterwards, on application, refused to perform his promise. This was admissible in two respects—first, as a declaration of the party, and secondly, as evidence that Ratnour had acted in bad faith in his representations made to the plaintiff.

But my brethren think the evidence of Kennedy was inadmissible, for the reasons stated in opinion of LEARNED, P. J., and hence the judgment must be reversed and a new trial granted, costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and TAPPAN, JJ.

Judgment and order reversed as to Ratnour, and new trial granted, costs to abide event.